

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/02/2020

| | |
|---|---|
| **In re:** | § **Chapter 11** |
| | § |
| **MD AMERICA ENERGY, LLC,** *et al.*, | § **Case No. 20-34966 (DRJ)** |
| | § |
| **Debtors.** [1] | § **(Jointly Administered)** |

(Docket No. 8)

**FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION FOR THE USE THEREOF; (III) MODIFYING
THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

Upon the *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection for the Use Thereof; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral; and (V) Granting Related Relief* (the "***Motion***"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), requesting, pursuant to sections 105, 361, 362, 363, 364, 506, 507, and 552 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "***Complex Case Rules***"):

(a)        authority for the Debtors to use Cash Collateral (as defined below) of Loan Admin Co LLC, in its capacity as administrative agent and collateral agent (in such capacities, the "***Administrative Agent***") for itself and for and on behalf of the other lenders from time to time party to the Prepetition Credit Agreement (as defined

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification, as applicable, number, are as follows: MD America Energy, LLC (0164), MD America Energy Holdings, Inc. (5493), MD America Intermediate Holdings, LLC (3204), MD America Holdings, LLC (5748), MD America Pipeline, LLC, and MD America Finance Corporation (8321). The address of the Debtors' headquarters is: 301 Commerce Street, Suite 2500 Fort Worth, Texas 76102.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion or the Prepetition Credit Agreement, as applicable.

10690604

below) (in such capacity, the "***Lenders***," and together with the Administrative Agent and the other Secured Creditors (as defined in the Prepetition Credit Agreement), the "***Prepetition Secured Parties***") in accordance with the terms and conditions set forth herein;

(b)     authorizing the Debtors to grant Adequate Protection (as defined below) to the Prepetition Secured Parties under or in connection with the Prepetition Claim Documents (as defined below);

(c)     approving certain stipulations of the Debtors with respect to the Prepetition Claim Documents, and the Prepetition Claim (as defined below);

(d)     modifying the automatic stay of section 362 of the Bankruptcy Code (the "***Automatic Stay***") to the extent set forth herein;

(e)     waiving any applicable stay (including under Bankruptcy Rules 6003 and 6004) with respect to the effectiveness and enforceability of this final order (this "***Final Order***") and providing for the immediate effectiveness of this Final Order.

Upon due and sufficient notice of the Motion and the final hearing on the Motion (the "***Final Hearing***") having been provided by the Debtors; and after considering all the pleadings filed with this Court (as defined below); and upon the record of the First Day Declaration, and the Motion; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and is otherwise fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' business; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor:

10690604

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A.      Petition Date**

1.      On October 12, 2020 (the "***Petition Date***"), the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***").  The Debtors are continuing in the management and operation of their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On October 13, 2020, the Court entered the *Interim Order (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection For The Use Thereof; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 As To Use Of Cash Collateral; And (V) Granting Related Relief* [Docket No. 57].  No trustee, examiner or Committee (as defined below) has been appointed in these chapter 11 cases.

2.      On October 9, 2020, the Debtors, certain Lenders, and the Administrative Agent entered into that certain restructuring support agreement (as may be amended, supplemented or otherwise modified in accordance with its terms, the "***Restructuring Support Agreement***") attached to the First Day Declaration as Exhibit A.

**B.      Jurisdiction**

3.      This Court has jurisdiction over these chapter 11 cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the Order of Reference to Bankruptcy Judges, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

**C.      Notice**

6.      Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with Bankruptcy Rules 2002, 4001, 6004, 9006, and 9014, the Bankruptcy Local Rules, and the Complex Case Rules and as required by sections 102, 105, 361, 362, and 363 of the Bankruptcy Code, and no other or further notice of the Motion or the entry of this Final Order shall be required.

7.      The final relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

**D.      Debtors' Stipulation**

8.      Subject to paragraph 31 of this Final Order, the Debtors, having reviewed and investigated the Prepetition Claim, the Prepetition Claim Documents, and the Prepetition Liens (each defined below), admit, stipulate and agree that:

(a)      *The Prepetition Credit Agreement*.  Certain of the Debtors,[3] the Administrative Agent, and the Lenders previously entered into that certain Credit Agreement, dated as of November 14, 2018, among MD America Energy, LLC, a Delaware limited liability company (the "***Borrower***"), the "Holding Companies" (as defined therein) party thereto, the Administrative Agent, and the Lenders from time to time party thereto (as amended by that certain First Amendment to Credit Agreement dated as of December 20, 2019 (the "***First Amendment***"), and as further supplemented, amended, or otherwise modified prior to the Petition Date, the "***Prepetition Credit Agreement***").

(b)      *Prepetition Claim*.

    i.      As of the Petition Date, pursuant to the Prepetition Claim Documents and applicable law, the Administrative Agent holds (for the benefit of the Prepetition Secured Parties) valid, enforceable, secured, and allowed claims against the Debtors, in an aggregate amount equal to at least: (a) unpaid principal in the amount of not less than $117,849,544.40, plus (b) (i) accrued and unpaid interest as of the Petition Date (including interest accruing on or after April 1, 2020 at the default rate of interest specified in the Prepetition Credit Agreement) and (ii) accrued and unpaid fees,

---

[3]      MD America Pipeline, LLC and MD America Finance Corporation are pledgors under, but not parties to, the Prepetition Credit Agreement.

including the Prepayment Premium (as defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement and other Prepetition Claim Documents as of the Petition Date, plus (c) any and all other interest (accruing at the default rate), fees, costs, expenses, indemnifications, charges, and other claims, debts, or obligations of the Debtors to the Prepetition Secured Parties that have accrued as of the Petition Date under the Prepetition Claim Documents and applicable law, including all unpaid professional fees due and owing under the Prepetition Claims Documents (collectively, the "***Prepetition Claim***").

ii.  The Prepetition Claim was and is evidenced by certain documents executed and delivered to the Prepetition Secured Parties by the Debtors, including, without limitation, the Prepetition Credit Agreement and the other Prepetition Claim Documents described below.

iii.  The Prepetition Claim was and is secured by the Prepetition Collateral (as defined below).

iv.  The Prepetition Claim constitutes, for the benefit of the Prepetition Secured Parties, a legal, valid, binding, and enforceable, obligation of, and allowed claim of the Prepetition Secured Parties against, each Debtor.   The Prepetition Claim, along with the first-priority liens upon and security interests of the Prepetition Secured Parties in the Prepetition Collateral, are not subject, and shall not be subject, to any offset, defense, counterclaim, avoidance, recharacterization, or subordination (whether equitable or otherwise), recovery, challenge, or claim pursuant to the Bankruptcy Code or any other applicable law.   The Debtors, their estates, and any official committee of creditors appointed in these chapter 11 cases (a "***Committee***"), do not possess and shall not be entitled to assert, except as otherwise provided in this Final Order, directly or directly, any claim, cause-of-action, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and/or amount of the Prepetition Claim or the validity, existence, enforceability, perfection, or priority of the first-priority liens upon and security interests in the Prepetition Collateral.

v.  The Debtors are in default of their debts and obligations to the Prepetition Secured Parties under the terms and provisions of the Prepetition Claim Documents, including without limitation, the failure to comply with Section 3.1(a) of the First Amendment with respect to the contribution and payment of the First Equity Proceeds Loan Repayment (as such term is defined in the First Amendment) on or prior to March 31, 2020 (collectively, the "***Defaults***").  These Defaults exist and were continuing as of the Petition Date, have not been waived, have not been timely cured, and are continuing. The filing of these chapter 11 cases has accelerated, to the extent not previously accelerated, the maturity of the Prepetition Claim for all purposes in these chapter 11 cases and in connection with the Prepetition

5

Secured Parties' enforcement of their respective rights and remedies under the Prepetition Claim Documents and applicable law. Each Debtor is indebted and liable under the terms and provisions of the Prepetition Claim Documents without defense, counterclaim, or offset of any kind, and the Prepetition Claim remains fully due and owing. From and after the Petition Date, except as set forth in this Final Order, neither the Administrative Agent nor the Lenders shall have any obligation to lend or advance funds to the Debtors or their estates.

(c)     *Prepetition Claim Documents.*

i.      (A) The Prepetition Credit Agreement and the other Credit Documents (as defined in the Prepetition Credit Agreement), including all notes, security agreements, control agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, intercreditor agreements and subordination agreements, (B) the Secured Hedge Agreements, and (C) other instruments or documents executed in connection with the foregoing or related thereto, are collectively referred to herein as the "***Prepetition Claim Documents***".

ii.     The Prepetition Claim was and is evidenced by certain documents executed and delivered to the Prepetition Secured Parties by the Debtors, including, without limitation, the Prepetition Credit Agreement and the other Prepetition Claim Documents described below.

iii.    The Prepetition Claim Documents are genuine, valid, existing, legally enforceable, and admissible in these chapter 11 cases for all purposes.

(d)     *Prepetition Collateral.*

i.      Subject to any Permitted Liens (as such term is defined in the Prepetition Credit Agreement) and the Postpetition Hedging Liens (as defined in the *Order (I) Authorizing Debtors to (A) Enter Into and Perform Under New Postpetition Hedging Agreements and (B) Grant Related Liens and Superpriority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* [Docket No. 54] (the "***Hedging Order***")), the Prepetition Claim evidenced by the Prepetition Claim Documents is secured by perfected, first-priority liens on and security interests in (collectively, the "***Prepetition Liens***") substantially all of the assets and property of the Debtors, including, without limitation:

A.      all of the Parent's right, title, and interest in the following property, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Parent: (1) the Collateral,[4] including without limitation, (I) all Securities with

---

[4]     Capitalized terms used but not otherwise defined in clause (A)(1) shall have the meanings ascribed to such terms in that certain *Pledge Agreement* dated November 14, 2018 (as amended, the "***Parent Pledge***

respect to the Equity Interests in MD America Energy Holdings, Inc., a Delaware corporation ("**Holdings**"), (II) all Limited Liability Company Interests, (III) all Partnership Interests, (IV) all Security Entitlements, (V) all Financial Assets with respect to the Equity Interests in Holdings, (VI) all Investment Property with respect to the Equity Interests in Holdings, and (VII) all Proceeds of the foregoing;

B.      substantially all of the Debtors' and their estates' property, other than any Excluded Property or Excluded Equity Interests (as such terms are defined in the Debtor Security Agreement and Debtor Pledge Agreement, as applicable), including all of the Debtors' right, title, and interest in, to and under all of and to the following assets, whether now existing or hereafter from time to time acquired, and regardless of where located: (1) the Collateral[5] of the Debtors including, without limitation: (I) all Collateral Accounts, (II) all Securities, (III) all Limited Liability Company Interests, (IV) all Partnership Interests, (V) all Security Entitlements, (VI) all Financial Assets, (VII) all Investment Property, and (VIII) all Proceeds of the foregoing; (2) the Collateral[6] of the Debtors, including, without limitation: (I) all Accounts, (II) all cash, (III) all Chattel Paper, (IV) all Commercial Tort Claims, (V) all Contracts and Contract Rights, (VI) all Copyrights, (VII) all Equipment, (VIII) all Deposit Accounts and all other demand, deposit, time, savings, cash management, passbook and similar accounts, and all cash, securities, instruments and investments deposited in any of the foregoing, (IX) all Documents, (X) all Fixtures, (XI) all General Intangibles, (XII) all Goods, (XIII) all Instruments, (XIV) all Inventory, (XV) all Investment Property, (XVI) all Promissory Notes, (XVII) all Letter-of-Credit Rights, (XVIII) all Marks, (XIX) all Necessary Authorizations, (XX) all Patents, (XXI) all Permits, (XXII) all Software and Software licensing rights, (XXIII) all Supporting Obligations, (XIV) all other tangible and intangible personal property, and (XV) all As-Extracted Collateral; and (3) the Mortgaged Property and UCC

---

Agreement"), between MeiDu America, Inc., a Delaware corporation (the "**Parent**") and the Administrative Agent.

[5]    Capitalized terms used but not otherwise defined in this clause (B)(1) shall have the meanings ascribed to such terms in that certain *Pledge Agreement* dated November 14, 2018 (as amended, the "**Debtor Pledge Agreement**"), by and among the Credit Parties and the Administrative Agent.

[6]    Capitalized terms used but not otherwise defined in this clause (B)(2) shall have the meanings ascribed to such terms in that certain Security Agreement dated November 14, 2018 (as amended, the "**Debtor Security Agreement**"), by and among the Credit Parties and the Administrative Agent.

Collateral[7] of each Mortgagor, including, without limitation: (I) all rights, titles, interests, and estates now owned or hereafter acquired by such Mortgagor in and to the Hydrocarbon Property described in Exhibit A of the Mortgages (as defined below); (II) all rights, titles, interests, and estates now owned or hereafter acquired by such Mortgagor in and to all geological, geophysical, engineering, accounting, title, legal, and other technical or business data concerning the Mortgaged Property, the Hydrocarbons, or any other items of property which are in the possession of such Mortgagor, and all books, files, records, magnetic media, computer records and other forms of recording or obtaining access to such data; (III) all rights, titles, interests, and estates now owned or hereafter acquired by such Mortgagor in and to all Hydrocarbons; (IV) any property that may from time to time hereafter, by delivery or by writing of any kind, be subjected to the Liens hereof by such Mortgagor or by anyone on such Mortgagor's behalf; and the Trustee and/or the Administrative Agent on behalf of the Lenders are hereby authorized to receive the same at any time as additional security hereunder; (V) all of the rights, titles, and interests of every nature whatsoever now owned or hereafter acquired by the Debtors in and to the Hydrocarbon Property described in Exhibit A to the Mortgages and all other rights, titles, interests, and estates and every part and parcel thereof, including, without limitation, any rights, titles, interests, and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges or Liens to which any of the Hydrocarbon Property rights, titles, interests, or estates are subject or otherwise; all rights of such Mortgagor to Liens securing payment of proceeds from the sale of production from the Mortgaged Property, together with any and all renewals and extensions of any of the Hydrocarbon Property rights, titles, interests, or estates; all contracts and agreements supplemental to or amendatory of or in substitution for the contracts and agreements described or mentioned above; and any and all additional interests of any kind hereafter acquired by such Mortgagor in and to such

---

[7]     Capitalized terms used but not otherwise defined in this clause (B)(3) shall have the meanings ascribed to such terms in (x) that certain *Deed of Trust, Assignment of As-Extracted Collateral, Assignment, Security Agreement, Fixture Filing, and Financing Statement* dated November 14, 2018 (as amended, the "***MD America Pipeline Mortgage***"), by MD America Pipeline, LLC, a Delaware limited liability company ("***MD Pipeline***", and together with the Borrower, the "***Mortgagors***"") in favor of the Administrative Agent and (y) that certain *Deed of Trust, Assignment of As-Extracted Collateral, Assignment, Security Agreement, Fixture Filing, and Financing Statement* dated November 14, 2018 (as amended, the "***MDAE Mortgage***", and together with the MD America Pipeline Mortgage, the "***Mortgages***"), by the Borrower in favor of the Administrative Agent.

related rights, titles, interests, or estates; (VI) all Gathering System Property; (VII) all Surface Rights; (VIII) all personal property, Throughput, As-extracted collateral, Accounts, Equipment, Inventory, contract rights, General Intangibles, Chattel Paper, Documents, Instruments, Fixtures, all Letter-of-Credit Rights, all books and records pertaining to the Mortgaged Properties; and (IX) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security, guarantees, and other Supporting Obligations given with respect to any of the foregoing (subparagraphs (1) through (3) in this paragraph, collectively, and all other assets and properties of the Debtors for which a lien in and security interest upon is granted pursuant to the Prepetition Claim Documents, and for the avoidance of doubt, together with the Cash Collateral (as defined below), the "***Prepetition Collateral***").

ii.   The Administrative Agent's liens on and security interests in the Prepetition Collateral were validly granted pursuant to, among other things, the Prepetition Claim Documents.

iii.  The Administrative Agent properly perfected its first priority liens and security interests and other liens on behalf of the Lenders in the Prepetition Collateral as evidenced by, among other things, the Prepetition Claim Documents, documents held in possession of the Administrative Agent, and documents filed with the appropriate state, county, and other public offices, in each case subject only to any Permitted Liens and the Postpetition Hedging Liens.

**E.    Releases**

9.    Subject to paragraph 31 of this Final Order, each of the Debtors (in their own right and on behalf of their estates) (collectively, the "***Releasing Parties***"), hereby releases, acquits, forever discharges and covenants not to sue the Prepetition Secured Parties, and their representatives, affiliates, investors, managers, separate accounts, directors, officers, employees, independent contractors, attorneys, advisors and agents, and any and all successors and assigns of the foregoing (the "***Released Parties***") from any and all acts and omissions of the Released Parties, whether occurring before, on or after the Petition Date, and from any and all claims, causes of action, avoidance actions, counterclaims, demands, controversies, losses, costs, debts, sums of

10690604

money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description that the releasing parties have or may come to have against the released parties through the date of this Final Order, whether arising before, on or after the Petition Date, at law or in equity, whether arising or relating to actions, inactions or events occurring prior to, on, or after the Petition Date, by statute or common law, in contract, in equity, in tort, including, without limitation, Bankruptcy Code Chapter 5 causes of action, whether under the law of the United States or state thereof, or any other country, union, organization of foreign countries or otherwise, known or unknown, suspected or unsuspected.  This paragraph is in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Releasing Parties in favor of the Released Parties. Notwithstanding the releases and covenants in favor of the Released Parties contained above in this paragraph, such releases and covenants in favor of the Released Parties shall be deemed reacknowledged and reaffirmed by the Debtors each time there is a financial accommodation or use of Cash Collateral under this Final Order and the Prepetition Claim Documents.  The releases and waivers in this paragraph shall survive in full force and effect notwithstanding the occurrence of a Cash Collateral Default under this Final Order or any other event or occurrence.

**F.      Findings Regarding the Cash Collateral**

10.      With respect to the Cash Collateral:

(a)      *The Cash Collateral.*

i.      All cash of each of the Debtors' bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, that were on the Petition Date in any of the Debtors' possession, custody or control (or persons in privity with any of the Debtors) or which represent income, proceeds, products, rents, or profits of any of the Prepetition Collateral, including to the extent the Debtor obtains an interest in such funds after the Petition Date, and all other cash collateral pursuant to Section 363(a) of the Bankruptcy Code, shall constitute the cash

10

collateral of the Administrative Agent on behalf of the Lenders (collectively, the "***Cash Collateral***").  Subject only to any Permitted Liens and the Postpetition Hedging Liens, the Administrative Agent on behalf of the Lenders has first-priority, perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Prepetition Claim Documents and this Final Order.

    ii.    Absent a further order of this Court or the consent of the Administrative Agent at the direction of the "Required Lenders" under and as defined in the Prepetition Credit Agreement (the "***Requisite Lenders***"), the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided herein.

(b)    *Need Use of Cash Collateral.*

    i.    The Debtors have an immediate and critical need to use Cash Collateral. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, and otherwise finance their operations, requires the availability and use of Cash Collateral.  Without the ability to access the Cash Collateral as provided for in this Final Order, the Debtors and their estates would suffer immediate and irreparable harm.

    ii.    The Administrative Agent, on behalf of the Lenders, does not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in this Final Order.  The relief hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, and pay other expenses necessary to maximize the value of the Debtors' estates.  The Debtors require the use of Cash Collateral as provided herein.

## G.    Findings Regarding the Adequate Protection

11.    With respect to the Adequate Protection (as defined below):

(a) The Administrative Agent, on behalf of the Lenders, is entitled, pursuant to the Bankruptcy Code, including sections 361, 363(c)(2), and 363(e), to adequate protection of the Administrative Agent's interest, on behalf of the Lenders, in property of the Debtors' estates, including the Prepetition Collateral, and the Debtors are obligated to provide such adequate protection to the extent that the Automatic Stay or any use, sale or lease of Prepetition Collateral (including Cash Collateral), or any grant of a lien in the Prepetition Collateral, solely to the extent of, and in an aggregate amount equal to, any diminution in value of the Administrative Agent's interests in the Prepetition Collateral, on behalf of the Lenders, in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date.

11

(b) Such diminution and decrease shall include, without limitation, an amount equal to the amount of the dollar for dollar use by the Debtors of Cash Collateral (such diminution and/or decrease in value, collectively, the "**Adequate Protection Obligations**").

## H.   Other Findings

12.     *Good Faith*.  The Debtors, and the Prepetition Secured Parties have negotiated the terms and provisions of this Final Order (including the Debtors' continued limited use of Cash Collateral) in good faith and at arm's length, and shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

13.     *Notice*.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors to certain parties in interest.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Final Order.

14.     *Immediate Entry*.  Absent immediate entry of this Final Order, the Debtors' business, properties, and estates will be immediately and irreparably harmed.  The Court concludes that immediate entry of this Final Order is in the best interest of the Debtors' and their estates. Based upon the foregoing findings and conclusions, the Motion, the record made before the Court with respect to the Motion at the Interim Hearing and Final Hearing, if any, and otherwise, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

15.     <u>Motion</u>.  The Motion is granted on a final basis in accordance with and subject to the terms and provisions set forth in this Final Order.  All objections to the relief sought in the Motion to the extent not withdrawn, waived, or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

12

10690604

16.     <u>Cash Collateral</u>.

(a)     *Authorization to Use Cash Collateral.*

      i.    The Debtors are authorized, until the occurrence of a Cash Collateral Default, to the extent set forth herein, to use Cash Collateral only in accordance with the terms and conditions provided in this Final Order and the 8-week cash flow budget attached hereto as **<u>Exhibit A</u>** (the "***Budget***") as the same may be extended in accordance herewith, in an amount not to exceed those amounts set forth in the Budget; *provided, however,* that the actual aggregate disbursements of the Debtors for any rolling four week period of the Budget (excluding amounts owed to the U.S. Trustee (as defined below), Adequate Protection payments, the Consenting Term Lender Fees and Expenses (as defined in the Restructuring Support Agreement), and any royalty payments held in suspense) shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%) (any variance not exceeding such maximum, a "***Permitted Variance***"), and excluding, for purposes of calculating such Permitted Variances, fees and expenses of Professional Persons (as defined below) which are subject to subparagraph 16(a)(vi). Any transfer or use of Cash Collateral by the Debtors shall be conditioned upon the Debtors' compliance with the Budget. Prior to any transfer or use of Cash Collateral by the Debtors, the Debtors shall review the proposed transfer or use of Cash Collateral for compliance with the Budget. After the transfer or use of Cash Collateral, the Debtors shall provide to the Administrative Agent and to DLA Piper LLP (US) and to Vinson and Elkins LLP (in such capacity, the "***AHG Notice Party***") on behalf of an ad hoc group of Lenders (the "***Ad Hoc Group***") such documentation as the Administrative Agent or the AHG Notice Party shall reasonably request to evidence the Debtors' compliance with the Budget.

      ii.    For the avoidance of doubt, Cash Collateral may not be used (1) by any entity that is not a Debtor or (2) to pay any expenses of any entity that is not a Debtor.

      iii.    Except on the terms and conditions of this Final Order, the Debtors are prohibited from using Cash Collateral at any time absent written consent of the Administrative Agent at the direction of the Requisite Lenders or further order of the Court.

      iv.    The Debtors shall maintain their cash management arrangements in a manner consistent with any order approving the *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Operating their Cash Management System, (B) Honor Certain Prepetition Obligations, and (C) Maintain Existing Bank Accounts and Business Forms, and (II) Granting Related Relief* (collectively, the "***Cash Management Orders***"). The Debtors shall immediately, and shall

10690604

continue to, segregate, remit, and deposit all Cash Collateral in each of the Debtors' accounts, possession, custody or control and which any of the Debtors may receive in the future, in accordance with the Cash Management Orders.

v.    To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be deemed to have been used first by the Debtors and be subject to the Adequate Protection Liens granted hereunder.

vi.    The payment of allowed fees and expenses of Professional Persons shall not be subject to the Budget prior to delivery of a Carve Out Trigger Notice (as defined below).  Commencing one month after the Petition Date and continuing on the second Monday of each calendar month thereafter, the Professional Persons shall provide to the Debtors, the Administrative Agent, and the AHG Notice Party a summary of fees and expenses accrued by such Professional Person for the prior calendar month and for which such Professional Persons intend to submit applications for compensation and reimbursement. In the event the amount of accrued fees and expenses for such Professional Persons for such prior calendar month exceeds the amount set forth in the Budget for the applicable period (the "***Monthly Estimate***") plus a 15% variance, the AHG Notice Party shall meet and confer with the Debtors and such Professional Persons to discuss any modification to the Budget and the Monthly Estimate; *provided*, *however*, that if the parties are unable to reach a consensual resolution regarding such modification to the Budget and the Monthly Estimate, then the Administrative Agent may, at the direction of the Requisite Lenders, deliver a Carve Out Trigger Notice); *provided further*, *however*, that the fees and expenses of Professional Persons that have accrued through the date of delivery of a Carve Out Trigger Notice in connection with any such Event of Default shall not be subject to the Budget. For the avoidance of doubt, nothing in this paragraph shall alter or affect the Professional Persons right to seek allowance or payment of the amount of a Professional Person's fees and expenses or the right of any party (including the Administrative Agent at the direction of the Requisite Lenders, whose right to object is expressly preserved) to object to the same.

(b)    *Reporting and Other Obligations.*  As a condition to the Administrative Agent's consent, on behalf of the Lenders, to the limited use of Cash Collateral:

i.    By not later than 5:00 p.m. (prevailing Central Time) on November 16, 2020, and on every fourth Monday thereafter by such time (or, if such Monday is not a business day, then the immediately succeeding business day), the Debtors shall deliver to the Administrative Agent and the AHG Notice Party a line-by-line reconciliation report showing the variances comparing actual cash receipts and disbursements of the Debtors during the immediately preceding four calendar weeks with corresponding forecasted

amounts for such week in the Budget, including written descriptions in reasonable detail explaining any positive or negative variances greater than 15%.

ii.     By not later than 5:00 p.m. (prevailing Central Time) on November 16, 2020, and on every fourth Monday thereafter by such time (or, if such Monday is not a business day, then the immediately succeeding business day), the Debtors shall deliver to the Administrative Agent and the AHG Notice Party an updated Budget for approval by the Administrative Agent at the direction of the Requisite Lenders.  An approved Budget may be modified in writing only with the prior written consent of the Administrative Agent at the direction of the Requisite Lenders.

iii.    The Debtors are authorized and directed to provide to the Administrative Agent and AHG Notice Party all of the documentation and reports required under the Prepetition Claim Documents, including, without limitation, the reports required by the Prepetition Credit Agreement, schedules, assignments, financial statements, insurance policies, and endorsements, unless the Administrative Agent at the direction of the Requisite Lenders waives or modifies such requirements in writing (the "**_Reporting Information_**").  The Reporting Information shall also include: (1) variance reports described in paragraph 16(b)(i); (2) copies of all reports submitted or filed with the Office of the United States Trustee (the "**_U.S. Trustee_**") within two days after such submission or filing; and (3) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates, as the Administrative Agent or the AHG Notice Party may from time to time request.  All Reporting Information shall be in accordance with past accounting principles, bookkeeping practices and reporting of the Debtors to the Administrative Agent.

iv.     The Prepetition Secured Parties and their representatives, agents, consultants and other professionals, shall be permitted, in coordination with Debtors' counsel, to contact and communicate with the Debtors' financial and restructuring advisors regarding the Debtors' estates. The Debtors shall be responsive and employ their commercially reasonable efforts to cooperate in the coordination of all such contacts and communications, including, without limitation, by conducting update telephone conferences with the Debtors, their financial and restructuring advisors, and the Prepetition Secured Parties upon reasonable request regarding matters affecting the Debtors' estates.

v.      The Prepetition Secured Parties and their representatives, agents and advisors, shall have reasonable access to the Debtors' business records, business premises, and to the Prepetition Collateral to enable the Prepetition Secured Parties or their respective representatives, agents and advisors to

Case 20-34966   Document 130   Filed in TXSB on 11/02/20   Page 16 of 39

(1) review, appraise, and evaluate the physical condition of the Prepetition Collateral, (2) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses, and (3) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with the Prepetition Secured Parties regarding such reviews, evaluations, and inspections, and shall make their employees and professionals reasonably available to the Prepetition Secured Parties and their representatives, agents and advisors, to conduct such reviews, evaluations, and inspections.

17.     _Adequate Protection_.  Solely to the extent of, and in an aggregate amount equal to, any diminution in value of the Administrative Agent's interests in the Prepetition Collateral and as a condition to the authorization hereunder for the Debtors use of Cash Collateral and other Prepetition Collateral, the Administrative Agent, on behalf of the Lenders, is hereby granted Adequate Protection Liens (as defined below), Super-Priority Adequate Protection Claims (as defined below), and all other forms of adequate protection set forth herein (collectively, the "***Adequate Protection***").

(a)     the Administrative Agent on behalf of the Lenders is hereby granted effective as of the Petition Date, to the extent of the Adequate Protection Obligations, the following (the property described in clauses i and ii together, the "***Adequate Protection Collateral***"):

i.     valid, binding, continuing, enforceable, unavoidable, and automatically perfected, replacement liens and security interests in and upon all of the Debtors' assets and properties that constitute Prepetition Collateral, which lien shall be subject only to (1) the Carve Out (as defined below), (2)(A) any valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date, other than the Prepetition Liens, and (B) valid and non-avoidable liens on property of a Debtor that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clauses (A) and (B) being referred to collectively as the "***Permitted Existing Liens***"), (3) the Postpetition Hedging Liens, and (4) the Prepetition Liens; and

ii.     valid, binding, continuing, enforceable, unavoidable, and automatically perfected, first-priority liens and security interests, in and upon all of the Debtors' assets and properties of the Debtors' estates that are not Prepetition Collateral, which lien shall be subject only to (1) the Carve Out, (2) the Postpetition Hedging Liens, and (3) the Permitted Existing Liens on such

16

assets and properties, whether now owned or hereafter acquired, including, without limitation, all personal and real property of the Debtors' estates and all products, proceeds, rents, and profits thereof, including all such assets and properties (other than all claims and causes of action under chapter 5 of the Bankruptcy Code, including section 549 of the Bankruptcy Code to recover any postpetition transfer of property of the estate, section 724(a) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents (such actions the "*Avoidance Actions*") that, from and after the Petition Date, is not subject to any lien or security interest, if any, and also including, upon entry of this Final Order, the proceeds, if any, of Avoidance Actions (all such liens and such liens granted pursuant to clause (a)(i) and (a)(ii) collectively, the "*Adequate Protection Liens*").

(b)     As additional Adequate Protection, the Debtors shall pay the reasonable fees and documented out-of-pocket expenses of (i) DLA Piper LLP (US) as legal counsel to the Administrative Agent, (ii) Vinson & Elkins LLP as legal counsel to the Ad Hoc Group, (iii) any other legal counsel to a Lender, but solely to the extent consistent with the definition of "Consenting Term Lender Fees and Expenses" in the Restructuring Support Agreement, and (iv) any other advisors deemed necessary by the Requisite Lenders (collectively, the "*Prepetition Secured Parties Professionals*"), incurred as a result of, in connection with, or in any way related to the exercise of remedies under the Prepetition Claim Documents or these chapter 11 cases, including in connection with the Restructuring Support Agreement, whether incurred before or after the Petition Date.  None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but, other than as set forth below, the U.S. Trustee, the Debtors, and any Committee may object to the reasonableness of such fees and expenses within ten business days of receipt of an invoice detailing such fees and expenses in summary form without the need for individual time entries, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  Promptly following the completion of the ten-business-day objection period, the Debtors shall pay the professional fees and expenses provided for in this paragraph that are not disputed, and shall promptly pay any disputed fees to the extent such disputed amount is resolved by this Court in the favor of the Prepetition Secured Parties Professionals. All fees and expenses owed to the Prepetition Secured Parties as of the Petition Date, regardless of whether or not such fees and expenses are set forth in the Budget and including, without limitation, all fees and expenses referred to in the Prepetition Claim Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute obligations that are part of the Prepetition Claim, as applicable, and shall be secured by the Prepetition Collateral and afforded all priorities and protections afforded to the Prepetition Secured Parties' Costs under this Final Order and the Prepetition Claim Documents.

10690604

(c)     To the extent any Adequate Protection is insufficient to adequately protect the Administrative Agent's interest on behalf of the Lenders in the Prepetition Collateral and the Adequate Protection Collateral, the Administrative Agent is hereby granted, on behalf of the Lenders, superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code (the "**Super-Priority Adequate Protection Claims**").  The Super-Priority Adequate Protection Claims shall be subject only to payment of the (i) Hedging Obligations (as defined in the Hedging Order) and (ii) Carve Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims, and all other claims against the Debtors or their estates in these chapter 11 cases or any successor cases, at any time existing or arising, of any kind or nature whatsoever.  The Super-Priority Adequate Protection Claims shall have recourse to and be payable from all pre- and postpetition property of the Debtors and their estates and all proceeds thereof, including the proceeds of any Avoidance Actions.  Except for the Hedging Obligations and the Carve Out, the Super-Priority Adequate Protection Claims shall not be made subject to, or *pari passu* with, any claim granted or created in these chapter 11 cases or any successor cases and shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in these chapter 11 cases or any successor cases.

(d)     This Final Order shall be without prejudice to (i) the rights of the Administrative Agent on behalf of the Lenders (but only at the direction of the Requisite Lenders) to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these chapter 11 cases, or to take any other action in these chapter 11 cases and to appear and be heard in any matter raised in these chapter 11 cases and (ii) any and all rights, remedies, claims, and causes of action that the Administrative Agent on behalf of the Lenders may have against any non-Debtor party liable for the Prepetition Claims.  For all Adequate Protection purposes throughout these chapter 11 cases, the Administrative Agent, on behalf of the Lenders, shall be deemed to have requested relief from the automatic stay and Adequate Protection for any decrease in value of the Prepetition Collateral or Adequate Protection Collateral from and after the Petition Date.  For the avoidance of doubt, such request will survive any termination of this Final Order.

(e)     The receipt by the Prepetition Secured Parties of the Adequate Protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Administrative Agent at the direction of the Requisite Lenders to seek additional relief with respect to the use of Cash Collateral or for additional Adequate Protection.  Nothing herein shall be deemed to waive, modify, or otherwise impair the rights of the Prepetition Secured Parties under the Prepetition Claim Documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of their rights and remedies whether now existing or hereafter arising under the Prepetition Claim Documents and/or equity or law.

10690604

(f)     This Final Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Adequate Protection Liens on the Adequate Protection Collateral granted and created hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of executing deposit account control agreements or creating, filing, recording, or serving any financing statements, mortgages, or other documents, that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens granted by this Final Order.

(g)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Adequate Protection Liens granted and created by this Final Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the law.

(h)     By virtue of the terms of this Final Order, to the extent that the Administrative Agent, on behalf of the Lenders, has entered into deposit account control agreements with the Debtors or filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such execution and filings, as applicable, shall be deemed to properly perfect its Adequate Protection Liens granted under this Final Order without further action by the Administrative Agent or by any of the Lenders.

(i)     If the Administrative Agent at the direction of the Requisite Lenders shall elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents, or enter into any deposit account control agreements, to further evidence perfection of its interests in property of the estates, the Administrative Agent, or, upon the request of the Administrative Agent, the Debtors, are authorized and directed to execute, or cause to be executed, all such mortgages, deeds of trust, other documents, or deposit account control agreements, and the filing, recording, or service (as the case may be) of such financing statements, mortgages, deeds of trust, or similar documents, or the execution of any deposit account control agreements, shall be deemed to have been made at the time of and on the Petition Date, and the signature(s) of any person(s) designated by the Debtors, whether by letter to the Administrative Agent or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the Administrative Agent granted on behalf of the Lenders hereunder shall bind the Debtors and their estates.  The Administrative Agent may, in its sole and absolute discretion, execute such documents on behalf of the Debtors as the Debtors' attorney-in-fact, or file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors have real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Final Order.

10690604

18.     <u>Automatic Stay</u>.  The Automatic Stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to (a) permit the Debtors to grant the Adequate Protection Liens and the Super-Priority Adequate Protection Claims, in each case as set forth herein, and to perform any and all acts to ensure that the Adequate Protection Liens are perfected and maintain the priority set forth herein, (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations under the terms of this Final Order; (d) authorize the Debtors to pay, and the Administrative Agent and the other Prepetition Secured Parties to retain and apply, any payments made in accordance with the terms of this Final Order; and (e) to permit any Prepetition Secured Party that is party to the Restructuring Support Agreement to deliver any notice and/or exercise any termination rights in connection therewith.

19.     <u>Authorization to Act</u>.

(a)     The Debtors are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the Prepetition Secured Parties may require as evidence of and for the protection of the Prepetition Collateral or the Adequate Protection Collateral, or that may be otherwise deemed necessary by the Prepetition Secured Parties to effectuate the terms and conditions of this Final Order.

(b)     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order, as applicable, and without further order of the Court:

  i.     the Debtors shall use all Cash Collateral only in accordance with the terms of this Final Order;

  ii.    the Debtors are not and shall not be authorized to obtain credit secured by a lien or security interest in the Prepetition Collateral, Cash Collateral, or Adequate Protection Collateral (collectively, the "***Collateral***") that is senior or in parity to the Prepetition Claim without the prior written consent of the Administrative Agent at the direction of the Requisite Lenders or further order of the Court;

10690604

iii.   the Debtors shall not, without prior order from the Court, engage in any transaction that is not in the ordinary course of the Debtors' business;

iv.   the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose (including through any casualty and condemnation events) of any portion of the Prepetition Collateral (or enter into any binding agreement to do so) other than as permitted by this Final Order; and

v.   subject to the extent of the Postpetition Hedging Liens and the Carve Out, the Adequate Protection Liens granted to the Administrative Agent on behalf of the Lenders pursuant to this Final Order shall not at any time be (A) made subject or subordinated to, or made *pari passu* with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under sections 363 or 364(d) of the Bankruptcy Code or otherwise or (B) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

20.   <u>Limitation on Liability</u>.  No action taken by the Administrative Agent or any Lender under this Final Order, the Prepetition Claim Documents, or otherwise, shall be used, construed, or deemed to hold the Administrative Agent or the Lenders to be in "control" of or participating in the governance, management, or operations of any of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of any of the Debtors or their respective businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Administrative Agent or the Lenders under the Prepetition Claim Documents or this Final Order, including, without limitation, such rights and remedies as may be exercisable by the Administrative Agent or the Lenders in connection with this Final Order.

21.  <u>Collateral Insurance, Maintenance, Taxes, and Deposits</u>.

(a)     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Prepetition Collateral, other property and business of the Debtors, in each case, in accordance with the Prepetition Claim Documents (covering such risks in amounts as is sufficient and as is customarily carried by businesses of the size and character of the business of the Debtors (other than with respect to business interruption policies, which policies shall provide for actual loss sustained of not less than one year in coverage, and shall name the Administrative Agent on behalf of the Lenders as loss payee or additional insured, as applicable, thereunder)), including, without limitation, insurance policies with respect to (i) commercial general liability, (ii) commercial auto, (iii) workers compensation and employers liability, (iv) umbrella and excess liability, (v) commercial property including coverage for material damages, (vi) employment practices liability, (viii) crime, (ix) fiduciary liability as set forth in the Prepetition Claim Documents and (x) such other types as described on Schedule VII of the Prepetition Credit Agreement (with the same scope of coverage described therein); and, at the Administrative Agent's reasonable request, the Debtors shall deliver to the Administrative Agent information as to the insurance carried.

(b)     If the Debtors fail to maintain insurance in accordance with the foregoing, or if the Debtors fail to endorse and deposit all policies or certificates with respect thereto, the Administrative Agent shall have the right (but not the obligation) to procure such insurance and each Debtor jointly and severally agrees to reimburse the Administrative Agent for all costs and expenses of procuring such insurance.

(c)     To the extent permitted by the Budget, subject to the Permitted Variance, the Debtors shall make any and all payments necessary to keep the Prepetition Collateral and their other property in good repair, working order, and efficiency (ordinary wear and tear and depletion excepted, including, without limitation, to preserve, maintain, and continue all material leases, patents, licenses, privileges, franchises, certificates, and the like necessary for the operation of their businesses).

(d)     To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits which are not included in the Budget, subject to the Permitted Variance, without first obtaining prior written consent of the Administrative Agent at the direction of the Requisite Lenders), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to the Adequate Protection Liens, and the Debtors' use of Cash Collateral granted by this Final Order.

22.  <u>Carve Out</u>.

(a)      As used in this Final Order, the term "***Carve Out***" means the sum of (a) all fees required to be paid to the Clerk of the Court and the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the Carve Out Trigger Notice set forth below), (c) to the extent of the amount allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Court, all unpaid fees and expenses, and without regard to whether such fees are provided for in the Budget or when invoiced (the "***Allowed Professional Fees***"), incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***"), and any appointed Committee pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "***Professional Persons***") at any time on or before the first business day following delivery by the Administrative Agent at the direction of the Requisite Lenders of a Carve Out Trigger Notice (as defined below); and (d) Allowed Professional Fees of Professional Persons in an aggregate amount, after application of all retainers, not to exceed $200,000 incurred on or after the first business day following delivery by the Administrative Agent at the direction of the Requisite Lenders of a Carve Out Trigger Notice (the amount set forth in this clause (d) being the "***Post-Carve Out Trigger Notice Cap***").

(b)      For purposes of the foregoing, "***Carve Out Trigger Notice***" shall mean a written notice stating that the Post-Carve Out Trigger Notice Cap has been invoked, delivered by hard copy, facsimile, or email (or other electronic means) by the Administrative Agent at the direction of the Requisite Lenders to the Debtors, their lead bankruptcy counsel, the U.S. Trustee, and counsel to any appointed Committee, which notice may be delivered following the occurrence and continued existence of a Cash Collateral Default under the terms of this Final Order.

(c)      Any payment or reimbursement made to any Professional Persons in respect of any Allowed Professional Fees prior to the delivery of the Carve Out Trigger Notice shall not reduce the Carve Out.

(d)      Any payment or reimbursement to a Professional Person made in respect of any Allowed Professional Fees incurred on or after the delivery of the Carve Out Trigger Notice shall permanently reduce the Post-Carve Out Trigger Notice Cap on a dollar-for-dollar basis.

(e)      Other than the Carve Out, neither the Administrative Agent nor the Lenders consent to any carve out from the Prepetition Collateral for the payment of any fees or expenses of any Professional Persons.  The amounts payable on account of Allowed Professional Fees are subject to final approval and allowance by the Court, and the Administrative Agent and Lenders expressly retain the right to object to any fees or expenses of any Professional Persons as to reasonableness or on any other grounds.

(f)     The Prepetition Secured Parties are not responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these chapter 11 cases or any subsequent cases under any chapter of the Bankruptcy Code or otherwise.  Nothing in this Final Order or otherwise shall be construed to obligate the Administrative Agent or the Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee or ensure that the Debtors have sufficient funds to pay such compensation or reimbursement, and any such obligation to make payments to any Professional Person shall be an obligation of the Debtors' estates.

(g)     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order, as applicable, any remaining unapplied retainer funds at the conclusion of a Professional Person's engagement shall be immediately returned to the Administrative Agent on behalf of the Lenders as Cash Collateral.

(h)     Any and all payments of fees and expenses to any Professional Person or use of Cash Collateral shall constitute a decrease in the value of the Prepetition Collateral and the Cash Collateral for all purposes including, without limitation, all adequate protection and superpriority claims granted under the Bankruptcy Code and this Final Order.

(i)     Notwithstanding anything to the contrary in this Final Order, neither the Carve Out, Cash Collateral, or any proceeds of the Collateral shall be used to pay any Allowed Professional Fees (including, without limitation, expenses) in connection with any of the following: (a) objecting to, seeking subordination of, seeking to avoid, or contesting in any manner the validity, amount, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim or offset to, the Motion or any of the relief requested therein, this Final Order, the Prepetition Claim, the Prepetition Liens, the Super-Priority Adequate Protection Claim, any Adequate Protection Liens, or any other claim or lien of the Administrative Agent or the Lenders, or the perfected status or priority of any of the Prepetition Liens, the Adequate Protection Liens, or any other liens of the Administrative Agent or the Lenders, or any other rights or interests of the Administrative Agent or the Lenders, including, without limitation, the Administrative Agent's and Lenders' exercise of such rights and remedies prior to the Petition Date; (b) asserting, investigating, prosecuting, or joining in any claim, demand, or cause of action against the Administrative Agent or any Lender, including, without limitation, for lender liability, breach of contract, or tort, or pursuant to Section 105, 506, 510, 544, 547, 548, 549, 550, 552 or 553 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, or any action that would constitute a Challenge (as defined below); (c) seeking to modify, or modifying, any of the rights granted under this Final Order to the Administrative Agent or any Lender or under the Prepetition Claim Documents; (d) after the occurrence and during the continuance of a Cash Collateral Default, objecting to, contesting, delaying, preventing, hindering, or interfering in any way with (i) the Administrative Agent's enforcement of

10690604

realization upon any of the Collateral or (ii) the exercise of any rights and remedies by the Administrative Agent or the Lenders with respect to any Collateral; (e) asserting or declaring any of the Prepetition Claim Documents, the Prepetition Liens, the Adequate Protection Liens, or this Final Order to be invalid, not binding, not perfected or unenforceable in any respect; (f) using Cash Collateral except as specifically permitted in this Final Order and the Budget; (g) selling any Prepetition Collateral or Adequate Protection Collateral outside the ordinary course of business except as specifically authorized by this Final Order or by order of the Court; (h) incurring any indebtedness except as permitted by this Final Order; (i) filing any motion or taking any other action that would constitute a Cash Collateral Default; (j) taking any action to support, directly or indirectly, another person to engage in an action that would constitute a Prohibited Action (defined below) if undertaken by the Debtors, or (k) committing any other act or taking any other actions that are materially adverse to the Administrative Agent or the Lenders (each of clauses (a) through (i) and clause (k) in this paragraph 22(i), a "***Prohibited Action***").  Notwithstanding the foregoing, Cash Collateral may be used to pay the fees earned and expenses incurred of counsel to any official Committee appointed in these chapter 11 cases in an amount not to exceed $25,000 to review the Prepetition Claim, the Prepetition Claim Documents, and any lien or security interest granted thereby, and to investigate (but not assert a challenge in respect of) the foregoing matters described in clause (a) through (e) of this paragraph.

23.     Section 552(b).  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or Adequate Protection Collateral.

24.     Section 506(c).  All rights to surcharge the interests of the Administrative Agent on behalf of the Lenders in any Prepetition Collateral or Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in these chapter 11 cases.

25.     No Marshaling.  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, or otherwise.  Without limiting the generality

25

of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition by any of the Prepetition Secured Parties of the Adequate Protection Collateral or Prepetition Collateral after a Cash Collateral Default.

26.   <u>Proofs of Claim</u>.  Neither the Administrative Agent nor any of the Lenders shall be required to file proofs of claim in any of these chapter 11 cases or in any subsequent cases of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' stipulations in this Final Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative expense claims and priority claims) in any of these chapter 11 cases or any subsequent cases shall not apply to the Administrative Agent or the Lenders with respect to the Prepetition Claim or the Adequate Protection Claim, as applicable. Notwithstanding the foregoing, the Administrative Agent is hereby authorized and entitled, at the direction of the Requisite Lenders, but not required, to file (and amend and/or supplement, as applicable) a single, master proof of claim (a "***Master Proof of Claim***") for any claims of the Administrative Agent or the Lenders arising from the Prepetition Claim Documents, hereunder, or otherwise.  Upon the filing of a Master Proof of Claim by the Administrative Agent, each of the Lenders and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever, and the claim of the Administrative Agent and each Lender (and each of its respective successors and assigns) named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these chapter 11 cases;

*provided, however*, that nothing herein shall waive the right of any Lender to file its own proof(s)

of claim against the Debtors.

      27.    <u>Events of Default</u>.  The following events each constitute an event of default (each

a "***Cash Collateral Default***"):

(a)      any material default, violation, or breach of any of the Debtors, or the Debtors' failure to comply in any material respect with, any of the terms of this Final Order;

(b)      the dismissal or conversion to chapter 7 of the Bankruptcy Code of any of these chapter 11 cases, or the Debtors file a motion or other pleading or support a motion or other pleading filed by any other person seeking the dismissal or conversion of any of these chapter 11 cases without the consent of the Requisite Lenders;

(c)      the appointment of a trustee or examiner with expanded powers (beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) under Bankruptcy Code section 1106(b) in these chapter 11 cases, or the Debtors file a motion or other pleading or support a motion or other pleading filed by any other person seeking appointment of such a trustee or examiner in any of these chapter 11 cases without the consent of the Requisite Lenders;

(d)      the grant of any security interest, lien, or encumbrance in any of the Prepetition Collateral or Adequate Protection Collateral which is *pari passu* with or senior to the liens, security interests, or claims of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens), including, without limitation, any surcharge of or the imposition or assessment of any costs against of the Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code sections 506(c) or 552(b) or otherwise, other than Permitted Liens and the Postpetition Hedging Liens, unless the Administrative Agent, at the direction of the Requisite Lenders, agrees in writing that such security interest, lien, or encumbrance does not constitute a Cash Collateral Default;

(e)      without the consent of the Requisite Lenders, the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than the Administrative Agent on behalf of the Lenders) in any Prepetition Collateral or the Adequate Protection Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Prepetition Collateral or the Cash Collateral;

(f)      any attempt by any Debtor to vacate or modify this Final Order without the consent of the Requisite Lenders;

(g)      the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Final Order without the consent of Requisite Lenders;

10690604

(h)        the Debtors' commencement of any challenge to the extent, validity, priority, amount, or unavoidability of the Prepetition Secured Parties' liens securing the Prepetition Claim or the Adequate Protection Claim, or the entry of an order sustaining any such challenge commenced by any party other than the Debtors;

(i)        the Debtors' failure to timely pay any amount required to be paid by this Final Order, or otherwise;

(j)        the Debtors' failure to adhere to the Budget (subject to the Permitted Variance) in accordance with this Final Order;

(k)        the entry of an order of the Court approving the terms of any debtor in possession financing for any of the Debtors without the consent of the Requisite Lenders providing that liens are senior to or on parity with the liens securing the Prepetition Claims;

(l)        the allowance of any priority claims (other than the Hedging Obligations and the Carve Out) in these chapter 11 cases that are senior to or on parity with the Super-Priority Adequate Protection Claims or Prepetition Claim;

(m)        except for the reasonable and necessary sale of inventory and supplies and the collection of accounts receivable in the ordinary course of the Debtors' businesses and as may be provided for in the Budget and consistent with the terms hereof, the sale, transfer, lease, or disposition of, or the imposition of any encumbrance on, any of the Prepetition Collateral or the Cash Collateral with an aggregate value greater than $500,000, without the prior written consent of the Administrative Agent at the direction of the Requisite Lenders;

(n)        the rendering of one or more judgments for the payment of money in an aggregate amount in excess of $250,000 (to the extent not covered by independent third party insurance provided by insurers satisfactory to the Requisite Lenders as to which the insurer does not dispute coverage and is not subject to an insolvency proceeding; *provided* that a claim that is pending under review by such an insurer shall not be deemed "denied" for purposes of this clause), shall be rendered against the Debtors and the same shall remain undischarged for a period of thirty consecutive days during which execution shall not be effectively stayed (including as a result of the pendency of these chapter 11 cases);

(o)        unless otherwise agreed by the Requisite Lenders, the entry of an order by the Court terminating or reducing the period during which the Debtors have the exclusive right to file a chapter 11 plan and solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code;

(p)        the Debtors shall obtain Court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the Prepetition Secured Parties;

(q)     any Debtor contests the validity or enforceability of any provision of any Prepetition Claim Document or the validity, extent, perfection or priority of a lien granted in favor of the Administrative Agent or shall support or consent to any other person concerning the foregoing;

(r)     the entry of an order of the Court pursuant to Bankruptcy Code section 363 approving the sale of any Prepetition Collateral or Adequate Protection Collateral without the consent of the Requisite Lenders;

(s)     the entry of an order of the Court pursuant to Bankruptcy Code section 363(k) limiting the ability of the Prepetition Secured Parties, either individually or together with one or more Prepetition Secured Party, to credit bid the full amount of their claims in these chapter 11 cases in connection with any asset sale process or plan sponsorship process or any sale of assets (in whole or part) by any Debtor, including without limitation sales occurring pursuant to Bankruptcy Code section 363 or included as part of any restructuring plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii);

(t)     the entry of an order of the Court without the consent of the Requisite Lenders providing for a transfer in venue of any of these chapter 11 cases;

(u)     under the Restructuring Support Agreement, the occurrence of a (i) "Consenting Lender Termination Event", (ii) a Company Party delivers written notice of a Company Party Termination Event (each as defined in the Restructuring Support Agreement) in accordance with the Restructuring Support Agreement, or (iii) the Restructuring Support Agreement ceases to be in full force and effect or is declared to be null and void; and

(v)     the failure of the parties to resolve any dispute regarding fees of any Professional Person pursuant to paragraph 16(a)(vi).

28.     <u>Rights and Remedies</u>.  Without requiring further order from the Court and without the need for filing any motion for relief from the Automatic Stay or any other pleading, upon the occurrence of any Cash Collateral Default and following the giving of not less than five business days' prior written notice (the "***Default Notice Period***") by the Administrative Agent (at the direction of the Requisite Lenders) via email to counsel to the Debtors, the U.S. Trustee, and counsel to any official Committee appointed in these chapter 11 cases, the Debtors' authority to use Cash Collateral shall immediately terminate; *provided, however*, that during the Default Notice Period, the Debtors may seek an emergency hearing before the Court to seek Cash Collateral use

29

on an emergency basis (but subject to any and all rights of any parties in interest to object thereto), and must provide prompt notice of such hearing to the Administrative Agent and AHG Notice Party.  Upon the occurrence and during the continuation of a Cash Collateral Default, the Administrative Agent and the Lenders are hereby authorized to file a motion on shortened notice seeking relief from the Automatic Stay in order to permit the Administrative Agent and the Lenders to exercise any or all of their rights and remedies set forth in this Final Order and the Prepetition Claim Documents pursuant to and subject to the terms and provisions of this Final Order and the Prepetition Claim Documents.  Notwithstanding the occurrence of a Cash Collateral Default, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties in this Final Order shall survive. Notwithstanding anything in this paragraph to the contrary, in connection with such emergency hearing, the Court may order such relief as it determines is appropriate following the occurrence of any Cash Collateral Default.

29.   <u>Right to Credit Bid</u>.  The Administrative Agent may, at the direction of the Requisite Lenders, credit bid any portion and up to the entire amount of the Administrative Agent's and the Lenders' respective claims, including, without limitation, the Prepetition Claim and the Adequate Protection Claim, at any time, including during any auction or other sale process, on any individual asset, portion of the assets, or all assets constituting their respective Prepetition Collateral or Adequate Protection Collateral in conjunction with any sale of the Debtors' assets pursuant to any chapter 11 plan or sale transaction, and the Administrative Agent on behalf of the Lenders shall have the right for at least two weeks after such auction or sale process to designate any entity to take title to such Prepetition Collateral or Adequate Protection Collateral in connection with such credit bid.

30.  <u>Expiration Date</u>.  Notwithstanding paragraphs 27 and 28, the Administrative Agent's consent on behalf of the Lenders, and Debtors' authority to use Cash Collateral under this Final Order shall automatically terminate on the effective date of a chapter 11 plan in connection with these chapter 11 cases (the "***Expiration Date***").

31.  <u>Effect of Stipulations and Releases</u>.  The Debtors' stipulations, admissions, releases, and waivers contained in paragraphs 8 and 9 of this Final Order shall be and hereby are binding upon (a) the Debtors' estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances and for all purposes and (b) all other parties in interest, including, without limitation, any Committee appointed or formed in these chapter 11 cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes, unless with respect to this clause (b), such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than November 5, 2020,[8] which is ten business days prior to the commencement of the hearing to confirm a chapter 11 plan in these chapter 11 cases, (the "***Challenge Period***"), as such Challenge Period may be extended in writing from time to time in the sole discretion of the Administrative Agent or by this Court for good cause shown pursuant to a motion filed by a party in interest prior to the expiration of the Challenge Period, provided*, however, that if, prior to the end of the Challenge Period, (x) the cases convert to chapter 7, or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge

---

[8]  As established by the *Order (I) Scheduling A Combined Disclosure Statement Approval And Plan Confirmation Hearing, (II) Conditionally Approving The Disclosure Statement, (III) Establishing A Plan And Disclosure Statement Objection Deadline And Related Procedures, (IV) Approving The Solicitation Procedures, And (V) Approving The Combined Notice* [Docket No. 60].

Period shall be extended for a period of fourteen (14) days solely with respect to any such trustee (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Claim or the Prepetition Liens, or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively (1) and (2), the "*Challenges*") against any of the Prepetition Secured Parties or their representatives in connection with matters related to the (a) Prepetition Claim Documents, (b) the Prepetition Claim, (c) the Prepetition Liens, or (d) the Prepetition Collateral; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding on all parties in interest, including, without limitation, the Committee (if any), (b) the obligations of the Debtors under the Prepetition Claim Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these chapter 11 cases, and any subsequent chapter 7 case(s), (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, in each case, subject to Permitted Liens and the Postpetition Hedging Liens, and (d) the Prepetition Claim and the Prepetition Liens shall not be subject to any other or further claim or challenge by any Committee or any other party in interest acting or seeking to act on behalf of the

10690604

Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Committee (if any), any non-statutory committees appointed or formed in these chapter 11 cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors, or any other stakeholder, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their representatives arising out of or relating to the Prepetition Claim Documents shall be deemed forever waived, released, and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in paragraphs 8 and 9 of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Final Order vests or confers on any person, including the Committee (if any), standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates.

     32.    <u>Other Terms</u>.

(a)    Except as otherwise provided in this Final Order, no obligations incurred or payments or other transfers made by or on behalf of the Debtors to the Administrative Agent or the Lenders after the Petition Date pursuant to this Final Order shall be avoidable or recoverable from the Administrative Agent or the Lenders under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise.  Any postpetition transfer or other payment by or on behalf of the Debtors to the Administrative Agent, or any postpetition application by the Administrative Agent, pursuant to this Final Order or otherwise, shall be subject to the priorities in payment as set forth in this Final Order and the Prepetition Claim Documents, as applicable.

10690604

(b)     The provisions of this Final Order shall inure to the benefit of the Debtors, the Administrative Agent and the Lenders, and they shall be binding upon (i) the Debtors and their successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as legal representative of the Debtors or with respect to property of the estates of the Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, any subsequent chapter 7 case, or after any dismissal of these chapter 11 cases and (ii) all creditors of or interest holders in any of the Debtors and other parties in interest.

(c)     Except for the reasonable and necessary sale of inventory and supplies in the ordinary course of the Debtors' business and as may be provided for in the Budget and consistent with the terms of the Prepetition Claim Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any of the Prepetition Collateral or the Adequate Protection Collateral without the prior written consent of the Administrative Agent at the direction of the Requisite Lenders or order of the Court; *provided*, *however*, that the Prepetition Secured Parties reserve all rights to object to any sale motion.  The proceeds from any sale of any of the Debtors' assets (other than inventory sold in the ordinary course of the Debtors' business) and any casualty or condemnation proceeds, shall be paid to the Administrative Agent on behalf of the Lenders for application to the Prepetition Claim and/or the Adequate Protection Claim, as determined by the Prepetition Secured Parties.

(d)     The Prepetition Secured Parties' consent for the Debtors' use of Cash Collateral is given in reliance on the terms and provisions of this Final Order, and so long as the Prepetition Claim, the Adequate Protection Claim, and all other claims of the Administrative Agent and the Lenders against the Debtors remain unpaid, there shall not at any time be entered in these chapter 11 cases any other order that, except as consented to by the Administrative Agent in writing at the direction of the Requisite Lenders, (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of the Prepetition Collateral or Adequate Protection Collateral unless the cash proceeds will indefeasibly pay the Prepetition Claim, the Adequate Protection Claim, and all other claims of the Administrative Agent and the Lenders against the Debtors in full, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property that is senior to or *pari passu* with liens and security interests held by the Administrative Agent, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to the Administrative Agent herein on behalf of the Lenders.

(e)     The terms hereunder and under the Prepetition Claim Documents, the Prepetition Liens, and the Adequate Protection Liens granted to the Administrative Agent under this Final Order on behalf of the Lenders, and the rights of the Administrative Agent under this Final Order with respect to the Prepetition Collateral and the Adequate Protection Collateral shall not be altered, modified, extended, impaired, or affected by any chapter 11 plan of the Debtors without the prior written approval of the Administrative Agent at the direction of the Requisite Lenders.

(f)       The terms and provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to chapter 7 or dismissing the Debtors' Cases, except for the Debtors' authority to use any Cash Collateral and any obligations.  The terms and provisions of this Final Order benefitting the Administrative Agent and the Lenders, as well as the priorities in payment, liens, and security interests granted pursuant to this Final Order and the Prepetition Claim Documents, shall continue after any dismissal of the Debtors' Cases in this or any subsequent case under the Bankruptcy Code of any of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Final Order until such time as the Prepetition Claim and the Adequate Protection Claim, and all other claims of the Administrative Agent and the Lenders against the Debtors shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order, and the Prepetition Secured Parties shall have no further obligation or financial accommodation to any of the Debtors.

(g)      If any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed without the prior written agreement of the Administrative Agent at the direction of the Requisite Lenders, such modification, vacation, or stay shall not affect the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to any of the Prepetition Claim Documents.  Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Administrative Agent before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the Administrative Agent shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein on behalf of the Lenders and pursuant to the Prepetition Claim Documents with respect to all such indebtedness, obligations, or liabilities.

(h)      No approval, agreement, or consent requested of the Administrative Agent by the Debtors pursuant to the terms of this Final Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Administrative Agent or any Lender other than a writing acceptable to the Administrative Agent and Lenders, as applicable, that is signed by the Administrative Agent and expressly shows such approval, agreement or consent, without limitation.  Nothing herein shall in any way affect the rights of the Administrative Agent or the Lenders as to any non-Debtor entity, without limitation.  Any act committed or action taken by the Administrative Agent hereunder shall be deemed to be made for itself and for and on behalf of the Lenders, as applicable.  Any authority or other right, benefit, or interest granted to the Administrative Agent hereunder is deemed to be granted to the Administrative Agent for itself and for and on behalf of the Prepetition Secured Parties.  Any postpetition transfer or other payment by or on behalf of the Debtors to the Administrative Agent, or any postpetition application by the Administrative Agent, pursuant to this Final Order or otherwise, shall be deemed to be made to the Administrative Agent, for itself and for and on behalf of the Prepetition Secured Parties, as applicable.

10690604

(i)      Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the Administrative Agent or the Lenders afforded pursuant to the Bankruptcy Code or other applicable law.

(j)      This Final Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court.  To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

(k)      The Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the Court under the Bankruptcy Code, to enforce the terms of this Final Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

33.    Notwithstanding any other provisions included in this Final Order, or any agreements approved hereby, any statutory tax liens (collectively, the "*Tax Liens*") of Harris County, Madison County and Tarrant County (the "*Texas Tax Authorities*") shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Tax Authorities are fully preserved.

34.    <u>Notice</u>.  The Debtors shall, within three business days of entry of this Final Order, mail copies of a notice of entry of this Final Order by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Vinson & Elkins, LLP as counsel to the Ad Hoc Group; (d) DLA Piper LLP as counsel to the Administrative Agent; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors

conduct business; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**Signed:  November 02, 2020.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>Exhibit A</u>**

**Budget**

10690604

**MD AMERICA ENERGY**

**Weekly Cash Collateral Budget**

($ ins 000's)

| Week Ending | 10/17/20 | 10/24/20 | 10/31/20 | 11/7/20 | 11/14/20 | 11/21/20 | 11/28/20 | 12/5/20 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | |
| Oil, Gas, & NGL Receipts | $    - | $    3,470 | $    - | $    69 | $    - | $    3,227 | $    - | $    124 | $    6,890 |
| Hedging Activity | - | - | - | - | - | - | - | - | - |
| JIB and Other Receipts | 50 | - | - | - | 50 | - | - | - | 100 |
| **Total Receipts** | 50 | 3,470 | - | 69 | 50 | 3,227 | - | 124 | $    6,990 |
| | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | |
| Revenue Distribution Current Production | - | - | 1,333 | - | - | - | 1,239 | - | 2,572 |
| Suspense Distributions | - | 1,750 | - | - | - | - | - | - | 1,750 |
| Lease Operating Expenses | 356 | 356 | 360 | 363 | 363 | 363 | 360 | 351 | 2,873 |
| Payroll & Benefits | 45 | 205 | 45 | 254 | 45 | 216 | 45 | 254 | 1,108 |
| Office and G&A Expenses | 45 | 45 | 122 | 45 | 575 | 45 | 122 | 45 | 1,043 |
| Utilities | 5 | 3 | 23 | 3 | 5 | 3 | 23 | 3 | 66 |
| Board Fees | - | - | - | - | - | - | - | - | - |
| Professional Services | - | - | 120 | 30 | 30 | 30 | 30 | 30 | 270 |
| **Total Operating Disbursements** | 451 | 2,359 | 2,002 | 694 | 1,018 | 657 | 1,818 | 683 | 9,682 |
| | | | | | | | | | |
| **Cash Flow From Operations** | (401) | 1,112 | (2,002) | (626) | (968) | 2,570 | (1,818) | (558) | $    (2,691) |
| | | | | | | | | | |
| **Non-Operating Disbursements** | | | | | | | | | |
| Capital Expenditures | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 120 |
| Non-Operating Disbursements | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 120 |
| | | | | | | | | | |
| Restructuring Disbursement | | | | | | | | | |
| Restructuring Professional Fees | - | - | - | - | - | - | - | 3,780 | 3,780 |
| Total Restructuring Disbursements | - | - | - | - | - | - | - | 3,780 | 3,780 |
| | | | | | | | | | |
| Total Disbursements | 466 | 2,374 | 2,017 | 709 | 1,033 | 672 | 1,833 | 4,478 | 13,582 |
| | | | | | | | | | |
| **Net Cash Flow** | (416) | 1,097 | (2,017) | (641) | (983) | 2,555 | (1,833) | (4,354) | $    (6,592) |
| | | | | | | | | | |
| Cash on Hand | | | | | | | | | |
| Beginning Cash | 18,326 | 17,910 | 19,006 | 16,989 | 16,348 | 15,365 | 17,921 | 16,088 | 18,326 |
| Net Cash Flow | (416) | 1,097 | (2,017) | (641) | (983) | 2,555 | (1,833) | (4,354) | (6,592) |
| **Ending Cash** | 17,910 | 19,006 | 16,989 | 16,348 | 15,365 | 17,921 | 16,088 | 11,734 | 11,734 |
| | | | | | | | | | |
| Less: Restricted Cash - CD | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Less: Suspense Funds at End of Month | 2,700 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 |
| Ending Unrestricted Cash Balance | 14,960 | 17,806 | 15,789 | 15,148 | 14,165 | 16,721 | 14,888 | 10,534 | $    10,534 |
| | | | | | | | | | |
| Suspense Account Activity | | | | | | | | | |
| Balance at Beginning of Month | 2,700 | 2,700 | 950 | 950 | 950 | 950 | 950 | 950 | |
| Amounts Added during Month | - | - | - | - | - | - | - | - | |
| Amounts Paid during Month | - | (1,750) | - | - | - | - | - | - | |
| Balance at End of Month | 2,700 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | |