# Exhibit B

EXECUTION VERSION

PLEDGE AGREEMENT

among

MD AMERICA ENERGY HOLDINGS, INC.

MD AMERICA INTERMEDIATE HOLDINGS, LLC

MD AMERICA HOLDINGS, LLC,

MD AMERICA ENERGY, LLC,

MD AMERICA PIPELINE, LLC,

MD AMERICA FINANCE CORPORATION

and

SUCH OTHER PLEDGORS PARTY HERETO,

as the PLEDGORS,

and

LOAN ADMIN CO LLC,

as PLEDGEE

Dated as of November 14, 2018

EAST\160339437.6

MDAE000566

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| 1. | SECURITY FOR SECURED OBLIGATIONS | 3 |
| 2. | DEFINITIONS | 4 |
| 3. | PLEDGE OF SECURITIES, ETC | 7 |
| 4. | APPOINTMENT OF SUB-AGENTS; ENDORSEMENTS, ETC | 13 |
| 5. | VOTING, ETC | 13 |
| 6. | DIVIDENDS AND OTHER DISTRIBUTIONS | 14 |
| 7. | REMEDIES IN CASE OF AN EVENT OF DEFAULT | 14 |
| 8. | REMEDIES, CUMULATIVE, ETC | 16 |
| 10. | APPLICATION OF PROCEEDS | 17 |
| 11. | PURCHASERS OF COLLATERAL | 17 |
| 12. | INDEMNITY; WAIVER OF CLAIMS | 17 |
| 13. | PLEDGEE NOT A PARTNER OR LIMITED LIABILITY COMPANY MEMBER | 18 |
| 14. | FURTHER ASSURANCES; POWER-OF-ATTORNEY | 19 |
| 15. | THE PLEDGEE AS COLLATERAL AGENT | 20 |
| 16. | TRANSFER BY THE PLEDGORS | 20 |
| 17. | REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE PLEDGORS | 20 |
| 18. | PLEDGORS' OBLIGATIONS ABSOLUTE, ETC | 23 |
| 19. | REGISTRATION, ETC | 23 |
| 20. | TERMINATION; RELEASE. | 25 |
| 21. | NOTICES, ETC | 26 |
| 22. | WAIVER; AMENDMENT; OBLIGATIONS ABSOLUTE | 26 |
| 23. | SUCCESSORS AND ASSIGNS | 27 |
| 24. | HEADINGS DESCRIPTIVE | 27 |
| 25. | GOVERNING LAW; SUBMISSION TO JURISDICTION; VENUE; WAIVER OF JURY TRIAL. | 27 |
| 26. | PLEDGOR'S DUTIES | 27 |
| 27. | COUNTERPARTS | 27 |
| 28. | SEVERABILITY | 27 |
| 30. | ADDITIONAL PLEDGORS | 28 |
| 31. | LIMITED OBLIGATIONS | 28 |

MDAE000567

**TABLE OF CONTENTS**
**(CONTINUED)**

Page

32.    RELEASE OF PLEDGORS ............................................................................................... 28

MDAE000568

ANNEX A   -   SCHEDULE OF LEGAL NAMES, TYPE OF ORGANIZATION, JURISDICTION OF ORGANIZATION, LOCATION AND ORGANIZATIONAL IDENTIFICATION NUMBERS

ANNEX B   -   SCHEDULE OF SUBSIDIARIES

ANNEX C-1   -   SCHEDULE OF STOCK

ANNEX C-2   -   SCHEDULE OF CERTIFICATED SECURITIES

ANNEX D   -   SCHEDULE OF NOTES

ANNEX E   -   SCHEDULE OF LIMITED LIABILITY COMPANY INTERESTS

ANNEX F   -   SCHEDULE OF PARTNERSHIP INTERESTS

ANNEX G   -   SCHEDULE OF CHIEF EXECUTIVE OFFICES

ANNEX H   -   FORM OF AGREEMENT REGARDING UNCERTIFICATED SECURITIES, LIMITED LIABILITY COMPANY INTERESTS AND PARTNERSHIP INTERESTS

EAST\160339437.6

MDAE000569

PLEDGE AGREEMENT

PLEDGE AGREEMENT (as amended, modified or supplemented from time to time, this "**Agreement**"), dated as of November 14 2018, among each of the undersigned pledgors (each, a "**Pledgor**" and, together with any other entity that becomes a pledgor hereunder pursuant to Section 30 hereof, the "**Pledgors**") and Loan Admin Co LLC, as collateral agent (the "**Collateral Agent**" and, together with any successor collateral agent, the "**Pledgee**"), for the benefit of the Secured Creditors (as defined below). Except as otherwise defined herein, all capitalized terms used herein and defined in the Credit Agreement (as defined below) shall be used herein as therein defined.

WITNESSETH:

WHEREAS, MD America Energy Holdings, Inc., a Delaware corporation ("**Holdings**"), MD America Intermediate Holdings, LLC, a Delaware limited liability company, MD America Holdings, LLC., a Delaware limited liability company, MD America Energy, LLC, a Delaware limited liability company (the "**Borrower**"), the Guarantors from time to time party thereto, the lenders from time to time party thereto (the "**Lenders**"), Loan Admin Co LLC, as administrative agent (together with any successor administrative agent, the "**Administrative Agent**") and Lead Arranger and Guggenheim Securities, LLC as Lead Arranger, have entered into a Credit Agreement, dated as of the date hereof (as amended, modified, restated and/or supplemented from time to time, the "**Credit Agreement**"), providing for the making of Loans to the Borrower, as contemplated therein;

WHEREAS, it is a condition precedent to the making of Loans to the Borrower under the Credit Agreement that each Pledgor shall have executed and delivered to the Pledgee this Agreement;

WHEREAS, pursuant to the Holdings Guaranty, each Holding Company has jointly and severally guaranteed the payment and performance when due of all Guaranteed Obligations as described therein;

WHEREAS, pursuant to the Subsidiaries Guaranty, the Subsidiaries party thereto have guaranteed, and the Subsidiaries that become parties thereto shall guarantee, in each case on a joint and several basis, the payment and performance when due of all Guaranteed Obligations as described therein; and

WHEREAS, each Pledgor will obtain benefits from the incurrence of Loans by the Borrower under the Credit Agreement and, if applicable, the entering into by the Borrower and/or one or more of the Subsidiaries of Holdings of Secured Hedge Agreements and, accordingly, desires to enter into this Agreement in order to satisfy the conditions described in the Credit Agreement and to induce the Lenders to make Loans and enter into Secured Hedge Agreements to the Borrower and other Credit Parties;

NOW, THEREFORE, in consideration of the foregoing and other benefits accruing to each Pledgor, the receipt and sufficiency of which are hereby acknowledged, each Pledgor hereby makes the following representations and warranties to the Pledgee for the benefit of the

2

MDAE000570

Secured Creditors and hereby covenants and agrees with the Pledgee for the benefit of the Secured Creditors as follows:

1.    SECURITY FOR SECURED OBLIGATIONS.  This Agreement is made by each Pledgor for the benefit of the Secured Creditors to secure:

(a)    the full and prompt payment when due (whether at the stated maturity, by acceleration or otherwise) of all obligations, liabilities and indebtedness (including, without limitation, principal, premium (including any Prepayment Premium), interest, fees, costs, and indemnities (including in each case, without limitation, all interest, fees and expenses that accrue after the commencement of any case, proceeding or other action relating to the bankruptcy, insolvency, reorganization or similar proceeding of any Pledgor or any Subsidiary thereof at the rate provided for in the respective documentation, whether or not a claim for post-petition interest, fee or expense is allowed in any such proceeding)) of all Credit Parties to the Secured Creditors, whether now existing or hereafter incurred under, arising out of, or in connection with, the Credit Agreement and the other Credit Documents (including, without limitation, in the event such Pledgor is a Holding Company or any Subsidiary Guarantor that becomes party hereto, all such obligations, liabilities and indebtedness of such Pledgor under the Holdings Guaranty or the applicable Subsidiaries Guaranty, respectively) and the due performance and compliance by all Credit Parties of and with all of the terms, conditions and agreements contained in the Credit Agreement and in such other Credit Documents (all such obligations, liabilities and indebtedness under this clause (a) except to the extent consisting of obligations, liabilities or indebtedness with respect to Secured Hedge Agreements, being herein collectively called the "**Credit Document Obligations**");

(b)    the full and prompt payment when due (whether at the stated maturity, by acceleration or otherwise) of all obligations, liabilities and indebtedness (including, in each case, without limitation, all interest, fees and expenses that accrue after the commencement of any case, proceeding or other action relating to the bankruptcy, insolvency, reorganization or similar proceeding of any Credit Party or any of its Subsidiaries at the rate provided for in the respective documentation, whether or not a claim for post-petition interest, fee or expense is allowed in any such proceeding) owing by all Credit Parties to the Secured Creditors, now existing or hereafter incurred under, arising out of or in connection with any Secured Hedge Agreement to which such Credit Party is a party, whether such Secured Hedge Agreement is now in existence or hereinafter arising (including, without limitation, in the case of a Holding Company or a Subsidiary Guarantor that becomes party hereto, all such obligations, liabilities and indebtedness of such Pledgor under the Holdings Guaranty or the applicable Subsidiaries Guaranty, respectively), and the due performance and compliance by such Credit Parties of and with all of the terms, conditions and agreements contained in each such Secured Hedge Agreement (all such obligations, liabilities and indebtedness under this clause (b) being herein collectively called the "**Other Obligations**");

(c)    any and all sums advanced by the Pledgee in order to preserve the Collateral (as hereinafter defined) or preserve its security interest in the Collateral;

3

MDAE000571

(d)    in the event of any proceeding for the collection or enforcement of any indebtedness, obligations or liabilities of such Pledgor referred to in clauses (i) and (ii) above, after an Event of Default shall have occurred and be continuing, the reasonable expenses of retaking, holding, preparing for sale or lease, selling or otherwise disposing of or realizing on the Collateral, or of any exercise by the Pledgee of its rights hereunder, together with reasonable attorneys' fees and court costs (in each case to the extent reimbursable pursuant to the Credit Agreement);

(e)    all amounts paid by any Secured Creditor as to which such Secured Creditor has the right to reimbursement under Section 12 of this Agreement; and

(f)    all amounts owing to the Pledgee or any of its affiliates pursuant to any of the Credit Documents;

all such obligations, liabilities, indebtedness, sums and expenses set forth in clauses (a) through (f) of this Section 1 being herein collectively called the "**Secured Obligations**," it being acknowledged and agreed that the "Secured Obligations" shall include extensions of credit of the types described above, whether outstanding on the date of this Agreement or extended from time to time after the date of this Agreement; provided that the term "**Secured Obligations**" shall not create any guarantee by any Pledgor of (or grant of security interest by any Pledgor to support) any Excluded Hedge Liabilities of such Pledgor.

2.    DEFINITIONS.

(a)    Reference to singular terms shall include the plural and vice versa.

(b)    The following capitalized terms used herein shall have the definitions specified below:

"**Administrative Agent**" shall have the meaning set forth in the recitals hereto.

"**Adverse Claim**" shall have the meaning given such term in Section 8-102(a)(1) of the UCC.

"**Agreement**" shall have the meaning set forth in the first paragraph hereof.

"**Borrower**" shall have the meaning set forth in the recitals of this Agreement.

"**Certificated Security**" shall have the meaning given such term in Section 8-102(a)(4) of the UCC.

"**CFC**" means a "controlled foreign corporation" as such term is defined in Section 957 of the Code.

"**CFC Holdco**" means a Subsidiary that has no material assets other than (i) the equity or indebtedness of one or more Foreign Subsidiaries that are CFCs and (ii) cash, cash equivalents and incidental assets related thereto held on a temporary basis.

4

MDAE000572

"**Clearing Corporation**" shall have the meaning given such term in Section 8-102(a)(5) of the UCC.

"**Collateral**" shall have the meaning set forth in Section 3(a) hereof.

"**Collateral Accounts**" shall mean any and all accounts established and maintained by the Pledgee in the name of any Pledgor to which Collateral may be credited.

"**Collateral Agent**" shall have the meaning set forth in the first paragraph of this Agreement.

"**Credit Agreement**" shall have the meaning set forth in the recitals hereto.

"**Credit Document Obligations**" shall have the meaning set forth in Section 1(a) hereof.

"**Domestic Subsidiary**" of any Person shall mean any Subsidiary of such Person incorporated or organized in the United States or any State thereof or the District of Columbia, other than any CFC Holdco.

"**Event of Default**" shall mean any Event of Default (or similar term, including any Termination Event under a Secured Hedge Agreement) under, and as defined in, the Credit Agreement or any Secured Hedge Agreement entered into with a Secured Creditor and shall in any event include, without limitation, any payment default on any of the Secured Obligations after the expiration of any applicable grace period.

"**Excluded Equity Interests**" shall mean (i) any capital stock in excess of 65% of the issued and outstanding voting capital stock of any first-tier Foreign Subsidiary or any first-tier CFC Holdco, (ii) any and all stock of any lower-tier Foreign Subsidiary or any lower-tier CFC Holdco and (iii) any and all stock in any Subsidiary of any Foreign Subsidiary or any CFC Holdco.

"**Financial Asset**" shall have the meaning given such term in Section 8-102(a)(9) of the UCC.

"**Foreign Subsidiary**" of any Person shall mean any Subsidiary of such Person that is not a Domestic Subsidiary.

"**Holdings**" shall have the meaning set forth in the recitals hereto.

"**Instrument**" shall have the meaning given such term in Section 9-102(a)(47) of the UCC.

"**Investment Property**" shall have the meaning given such term in Section 9-102(a)(49) of the UCC.

"**Lenders**" shall have the meaning set forth in the recitals hereto.

MDAE000573

"**Limited Liability Company Assets**" shall mean all assets, whether tangible or intangible and whether real, personal or mixed (including, without limitation, all limited liability company capital and interest in other limited liability companies), at any time owned by any Pledgor or represented by any Limited Liability Company Interest.

"**Limited Liability Company Interests**" shall mean the entire limited liability company membership interest at any time owned by any Pledgor in any limited liability company.

"**Location**" of any Pledgor shall mean such Pledgor's "location" as determined pursuant to Section 9-307 of the UCC.

"**Notes**" shall mean (x) all intercompany notes at any time issued to each Pledgor and (y) all other promissory notes from time to time issued to, or held by, each Pledgor.

"**Other Obligations**" shall have the meaning set forth in Section 1(b) hereof.

"**Partnership Assets**" shall mean all assets, whether tangible or intangible and whether real, personal or mixed (including, without limitation, all partnership capital and interest in other partnerships), at any time owned or represented by any Partnership Interest.

"**Partnership Interest**" shall mean the entire general partnership interest or limited partnership interest at any time owned by any Pledgor in any general partnership or limited partnership.

"**Pledged Notes**" shall have the meaning set forth in Section 3(e) hereof.

"**Pledgee**" shall have the meaning set forth in the first paragraph hereof.

"**Pledgor**" shall have the meaning set forth in the first paragraph hereof.

"**Proceeds**" shall have the meaning given such term in Section 9-102(a)(64) of the UCC and, in any event, shall also include, but not be limited to, (i) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Pledgee or any Pledgor from time to time with respect to any of the Collateral, (ii) any and all payments (in any form whatsoever) made or due and payable to any Pledgor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any Governmental Authority (or any Person acting under color of Governmental Authority), and (iii) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"**Registered Organization**" shall mean a "registered organization" as such term is defined in Section 9-102 (a) (70) of the UCC.

"**Required Secured Creditors**" shall have the meaning provided in the Security Agreement.

"**Secured Creditors**" shall have the meaning provided in the Security Agreement.

EAST\160339437.6

MDAE000574

"**Secured Debt Agreements**" shall mean and include (i) this Agreement and the other Credit Documents and (ii) the Secured Hedge Agreements (as defined in the Hedge Intercreditor Agreement) entered into with any Secured Creditor.

"**Secured Obligations**" shall have the meaning set forth in Section 1 hereof.

"**Securities Act**" shall mean the Securities Act of 1933, as amended, as in effect from time to time.

"**Securities Intermediary**" shall have the meaning given such term in Section 8-102(14) of the UCC.

"**Security**" and "**Securities**" shall have the meaning given such term in Section 8-102(a)(15) of the UCC and shall in any event also include all Stock and all Notes.

"**Security Entitlement**" shall have the meaning given such term in Section 8-102(a)(17) of the UCC.

"**Stock**" shall mean all of the issued and outstanding shares of capital stock at any time owned by any Pledgor of any corporation.

"**Termination Date**" shall have the meaning set forth in Section 20(a).

"**UCC**" shall mean the Uniform Commercial Code as in effect in the State of New York from time to time; provided that all references herein to specific sections or subsections of the UCC are references to such sections or subsections, as the case may be, of the Uniform Commercial Code as in effect in the State of New York on the date hereof.

"**Uncertificated Security**" shall have the meaning given such term in Section 8-102(a)(18) of the UCC.

3.    PLEDGE OF SECURITIES, ETC.

(a)    Pledge. To secure the Secured Obligations now or hereafter owed or to be performed by such Pledgor, each Pledgor does hereby grant, pledge and assign to the Pledgee for the benefit of the Secured Creditors, and does hereby create a continuing security interest in favor of the Pledgee for the benefit of the Secured Creditors in, all of its right, title and interest in and to the following, whether now existing or hereafter from time to time acquired (collectively, the "**Collateral**"):

(i)    each of the Collateral Accounts, including any and all assets of whatever type or kind deposited by such Pledgor in each such Collateral Account, whether now owned or hereafter acquired, existing or arising, including, without limitation, all Financial Assets, Investment Property, monies, checks, drafts, Instruments, Securities or interests therein of any type or nature deposited or required by the Credit Agreement or any other Secured Debt Agreement to be deposited in each such Collateral Account, and all investments and all certificates and other Instruments (including depository receipts, if any) from time to time

MDAE000575

representing or evidencing the same, and all dividends, interest, distributions, cash and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the foregoing;

(ii)     all Securities owned or held by such Pledgor from time to time and all options and warrants owned by such Pledgor from time to time to purchase Securities, together with all rights, privileges, authority and powers of such Pledgor relating to such Securities in each such issuer or under any organizational document of each such issuer, and the certificates, instruments and agreements representing such Securities and any and all interest of such Pledgor in the entries on the books of any financial intermediary pertaining to such Securities;

(iii)     all Limited Liability Company Interests owned by such Pledgor from time to time and all of its right, title and interest in each limited liability company to which each such interest relates, whether now existing or hereafter acquired, including, without limitation, to the fullest extent permitted under the terms and provisions of the documents and agreements governing such Limited Liability Company Interests and applicable law:

(A)     all the capital thereof and its interest in all profits, income, surpluses, losses, Limited Liability Company Assets and other distributions to which such Pledgor shall at any time be entitled in respect of such Limited Liability Company Interests;

(B)     all other payments due or to become due to such Pledgor in respect of Limited Liability Company Interests, whether under any limited liability company agreement or otherwise, whether as contractual obligations, damages, insurance proceeds or otherwise;

(C)     all of its claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under any limited liability company agreement or operating agreement, or at law or otherwise in respect of such Limited Liability Company Interests;

(D)     all present and future claims, if any, of such Pledgor against any such limited liability company for monies loaned or advanced, for services rendered or otherwise;

(E)     all of such Pledgor's rights under any limited liability company agreement or operating agreement or at law to exercise and enforce every right, power, remedy, authority, option and privilege of such Pledgor relating to such Limited Liability Company Interests, including any power to terminate, cancel or modify any such limited liability company agreement or operating agreement, to execute any instruments and to take any and all other action on behalf of and in the name of any of such Pledgor in respect of such Limited Liability Company Interests and any such limited liability company, to make determinations, to exercise

8

MDAE000576

any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce, collect or receipt for any of the foregoing or for any Limited Liability Company Asset, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and

(F)    all other property hereafter delivered in substitution for or in addition to any of the foregoing, all certificates and instruments representing or evidencing such other property and all cash, securities, interest, dividends, rights and other property at any time and from time to time received, receivable or otherwise distributed in respect of the foregoing or in exchange for any or all thereof;

(iv)    all Partnership Interests owned by such Pledgor from time to time and all of its right, title and interest in each partnership to which each such interest relates, whether now existing or hereafter acquired, including, without limitation, to the fullest extent permitted under the terms and provisions of the documents and agreements governing such Partnership Interests and applicable law:

(A)    all the capital thereof and its interest in all profits, income, surpluses, losses, Partnership Assets and other distributions to which such Pledgor shall at any time be entitled in respect of such Partnership Interests;

(B)    all other payments due or to become due to such Pledgor in respect of Partnership Interests, whether under any partnership agreement or otherwise, whether as contractual obligations, damages, insurance proceeds or otherwise;

(C)    all of its claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under any partnership agreement or operating agreement, or at law or otherwise in respect of such Partnership Interests;

(D)    all present and future claims, if any, of such Pledgor against any such partnership for monies loaned or advanced, for services rendered or otherwise;

(E)    all of such Pledgor's rights under any partnership agreement or operating agreement or at law to exercise and enforce every right, power, remedy, authority, option and privilege of such Pledgor relating to such Partnership Interests, including any power to terminate, cancel or modify any partnership agreement or operating agreement, to execute any instruments and to take any and all other action on behalf of and in the name of any of such Pledgor in respect of such Partnership

EAST\160339437.6

MDAE000577

Interests and any such partnership, to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce, collect or receipt for any of the foregoing or for any Partnership Asset, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and

(F)     all other property hereafter delivered in substitution for or in addition to any of the foregoing, all certificates and instruments representing or evidencing such other property and all cash, securities, interest, dividends, rights and other property at any time and from time to time received, receivable or otherwise distributed in respect of the foregoing or in exchange for any or all thereof;

(v)     all Security Entitlements owned by such Pledgor from time to time in any and all of the foregoing;

(vi)     all Financial Assets and Investment Property owned by such Pledgor from time to time; and

(vii)     all Proceeds of any and all of the foregoing;

provided that in no event shall any "Excluded Property" (as defined in the Security Agreement) or Excluded Equity Interests constitute Collateral hereunder.

(b)     Procedures.

(i)     To the extent that any Pledgor at any time or from time to time owns, acquires or obtains any right, title or interest in any Collateral, such Collateral shall automatically (and without the taking of any action by the respective Pledgor) be pledged pursuant to Section 3(a) of this Agreement and, in addition thereto, the respective Pledgor shall (to the extent provided below) take the following actions as set forth below (as promptly as practicable and, in any event, within 20 Business Days after it obtains such Collateral (or such longer period as agreed to by the Collateral Agent in its sole discretion)) for the benefit of the Pledgee and the other Secured Creditors:

(A)     with respect to a Certificated Security (other than a Certificated Security credited on the books of a Clearing Corporation or Securities Intermediary), the respective Pledgor shall physically deliver such Certificated Security to the Pledgee, endorsed to the Pledgee or endorsed in blank (and on the date hereof, the respective Pledgor shall deliver to the Pledgee the Certificated Securities set forth on Annex C-2 hereto, endorsed to the Pledgee or endorsed in blank);

(B)     with respect to an Uncertificated Security (other than an Uncertificated Security credited on the books of a Clearing Corporation or

EAST\160339437.6

MDAE000578

Securities Intermediary), and at any time when an Event of Default has occurred and is continuing, the respective Pledgor shall cause the issuer of such Uncertificated Security (or, in the case of an issuer that is not a Subsidiary of such Pledgor, will use its reasonable efforts to cause such issuer) to duly authorize and execute, and deliver to the Pledgee, an agreement for the benefit of the Pledgee and the other Secured Creditors substantially in the form of Annex H hereto (appropriately completed to the reasonable satisfaction of the Pledgee and with such modifications, if any, as shall be reasonably satisfactory to the Pledgee) pursuant to which such issuer agrees to comply with any and all instructions originated by the Pledgee without further consent by the registered owner and not to comply with instructions regarding such Uncertificated Security originated by any other Person other than a court of competent jurisdiction;

(C)    with respect to a Certificated Security, Uncertificated Security, Partnership Interest or Limited Liability Company Interest credited on the books of a Clearing Corporation or Securities Intermediary (including a Federal Reserve Bank, Participants Trust Company or The Depository Trust Company), the respective Pledgor shall promptly notify the Pledgee thereof and shall promptly take all reasonable actions required (x) to comply with the applicable rules of such Clearing Corporation or Securities Intermediary, and (y) to perfect the security interest of the Pledgee under applicable law (including, in any event, under Sections 9-314(a) and (c), 9-106 and 8-106(d) of the UCC). The Pledgor further agrees to take such actions as the Pledgee deems reasonably necessary or desirable to effect the foregoing;

(D)    with respect to a Partnership Interest or a Limited Liability Company Interest (other than a Partnership Interest or Limited Liability Company Interest credited on the books of a Clearing Corporation or Securities Intermediary), (x) if such Partnership Interest or Limited Liability Company Interest is represented by a certificate and is a Security for purposes of the UCC, the procedure set forth in Section 3(b)(i)(A) hereof, and (y) if such Partnership Interest or Limited Liability Company Interest is not represented by a certificate or is not a Security for purposes of the UCC, the procedure set forth in Section 3(b)(i)(A) hereof;

(E)    with respect to any Note represented by a physical promissory note or similar physical instrument (other than any Note which does not have a principal amount in excess of $500,000), physical delivery of such Note to the Pledgee, endorsed to the Pledgee or endorsed in blank; provided that if the aggregate principal amount of all such Notes held by the Pledgors exceeds $1,000,000 at any time, the Pledgors shall deliver all such notes to the Pledgee, endorsed to the Pledgee or endorsed in blank; and

11

MDAE000579

(F)     with respect to cash proceeds from any of the Collateral described in Section 3(a) hereof for which the Pledgee is entitled to retain pursuant to the terms of this Agreement, (i) establishment by the Pledgee of a cash account in the name of such Pledgor over which the Pledgee shall have "control" within the meaning of the UCC and at any time any Default or an Event of Default is in existence no withdrawals or transfers may be made therefrom by any Person except with the prior written consent of the Pledgee and (ii) deposit of such cash in such cash account.

(ii)     In addition to the actions required to be taken pursuant to Section 3(b) hereof, each Pledgor shall take the following additional actions with respect to the Securities and Collateral:

(A)     with respect to all Collateral of such Pledgor whereby or with respect to which the Pledgee may obtain "control" thereof within the meaning of Section 8-106 of the UCC (or under any provision of the UCC as same may be amended or supplemented from time to time, or under the laws of any relevant State other than the State of New York), the respective Pledgor shall take all actions as may be reasonably requested from time to time by the Pledgee so that "control" of such Collateral is obtained and at all times held by the Pledgee; and

(B)     each Pledgor shall from time to time cause appropriate financing statements (on Form UCC-1 or other appropriate form) under the Uniform Commercial Code as in effect in the various relevant States, covering all Collateral hereunder (with the form of such financing statements to be satisfactory to the Pledgee), to be filed in the relevant filing offices so that at all times the Pledgee has a security interest in all Investment Property and other Collateral which is perfected by the filing of such financing statements (in each case to the maximum extent perfection by filing may be obtained under the laws of the relevant States, including, without limitation, Section 9-312(a) of the UCC).

(c)     Subsequently Acquired Collateral.  If any Pledgor shall acquire (by purchase, stock dividend or similar distribution or otherwise) any additional Collateral at any time or from time to time after the date hereof, such Collateral shall automatically (and without any further action being required to be taken) be subject to the pledge and security interests created pursuant to Section 3(a) hereof and, furthermore, the respective Pledgor will thereafter take (or cause to be taken) all action (as promptly as practicable and, in any event, within 15 Business Days (or such longer time period as agreed by the Pledgee in its reasonable discretion) after it obtains such Collateral) with respect to such Collateral in accordance with the procedures set forth in Section 3(b) hereof, and will promptly thereafter deliver to the Pledgee (i) written notice describing such Collateral and stating that the same has been duly pledged in favor of the Pledgee (for the benefit of the Secured Creditors) hereunder, and (ii) such supplements to Annexes A through G hereto as are reasonably necessary to cause such annexes to be complete and accurate at

12

MDAE000580

such time. Without limiting the foregoing, no Pledgor shall be required to pledge any Excluded Equity Interests or Excluded Property.

(d)     Transfer Taxes.   Each pledge of Collateral under Section 3(a) or Section 3(c) hereof shall be accompanied by any transfer tax stamps required, or such other documentation as will establish that any applicable tax has been paid, in connection with the pledge of such Collateral.

(e)     Definition of Pledged Notes.   All Notes at any time pledged or required to be pledged hereunder are hereinafter called the "**Pledged Notes**."

(f)     Certain Representations and Warranties Regarding the Collateral.   Each Pledgor represents and warrants that on the date hereof: (i) the exact legal name of such Pledgor, the type of organization of such Pledgor, whether or not such Pledgor is a Registered Organization, the jurisdiction of organization of such Pledgor, such Pledgor's Location, the organizational identification number (if any) of such Pledgor, is listed on Annex A hereto; (ii) each Subsidiary of such Pledgor, and the direct ownership thereof, is listed in Annex B hereto; (iii) the Stock (and any warrants or options to purchase Stock) held by such Pledgor consists of the number and type of shares of the stock (or warrants or options to purchase any stock) of the corporations as described in Annex C-1 hereto; (iv) such Stock constitutes that percentage of the issued and outstanding capital stock of the issuing corporation as is set forth in Annex C-1 hereto; (v) the Notes held by such Pledgor consist of the promissory notes described in Annex D hereto where such Pledgor is listed as the lender; (vi) the Limited Liability Company Interests held by such Pledgor consist of the number and type of interests of the Persons described in Annex E hereto; (vii) each such Limited Liability Company Interest constitutes that percentage of the issued and outstanding equity interest of the issuing Person as set forth in Annex E hereto; (viii) the Partnership Interests held by such Pledgor consist of the number and type of interests of the Persons described in Annex F hereto; (ix) each such Partnership Interest constitutes that percentage or portion of the entire partnership interest of the Partnership as set forth in Annex F hereto; (x) the address of the chief executive office of such Pledgor is listed on Annex G hereto; (xi) the Pledgor has complied with the respective procedure set forth in Section 3(b)(i) hereof with respect to each item of Collateral described in Annexes B through F hereto; and (xii) on the date hereof, such Pledgor owns no Securities, Stock, Notes, Limited Liability Company Interests or Partnership Interests other than as set forth on Annexes B through F hereto.

4.     APPOINTMENT OF SUB-AGENTS; ENDORSEMENTS, ETC.   The Pledgee shall have the right to appoint one or more sub-agents for the purpose of retaining physical possession of the Collateral, which may be held (in the discretion of the Pledgee) in the name of the relevant Pledgor, endorsed or assigned in blank or in favor of the Pledgee or any nominee or nominees of the Pledgee or a sub-agent appointed by the Pledgee; provided, that no such appointment of a sub-agent shall affect the obligations of the Pledgee under this Agreement.

5.     VOTING, ETC.   Unless and until there shall have occurred and be continuing an Event of Default, each Pledgor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Collateral owned by it, and to give consents, waivers or

MDAE000581

ratifications in respect thereof; provided that, in each case, no vote shall be cast or any consent, waiver or ratification given or any action taken or omitted to be taken which would violate, result in a breach of any covenant contained in, or be inconsistent with any of the terms of any Secured Debt Agreement unless otherwise permitted by the Secured Debt Agreements. All such rights of each Pledgor to vote and to give consents, waivers and ratifications shall cease at any time after the occurrence and during the continuance of an Event of Default and upon prior or contemporaneous written notice of Pledgee of its intent to exercise its rights under this Agreement to the Pledgor (provided that no such notice shall be required if any Event of Default under Section 12.05 of the Credit Agreement has occurred and is continuing), and Section 7 hereof shall become applicable.

6.     DIVIDENDS AND OTHER DISTRIBUTIONS.   Unless and until there shall have occurred and be continuing an Event of Default, all cash dividends, cash distributions, cash Proceeds and other cash amounts payable in respect of the Collateral shall be paid to the respective Pledgor.   Following the occurrence and during the continuation of an Event of Default, and following written notice (other than with respect to an Event of Default under Section 12.05 of the Credit Agreement) that the Pledgee is exercising remedies hereunder, the Pledgee shall be entitled to receive directly, and to retain as part of the Collateral:

(a)     all other or additional stock, notes, certificates, limited liability company interests, partnership interests, instruments or other securities or property (including, but not limited to, cash dividends other than as set forth below) paid or distributed by way of dividend or otherwise in respect of the Collateral;

(b)     all other or additional stock, notes, certificates, limited liability company interests, partnership interests, instruments or other securities or property (including, but not limited to, cash) paid or distributed in respect of the Collateral by way of stock-split, spin-off, split-up, reclassification, combination of shares or similar rearrangement; and

(c)     all other or additional stock, notes, certificates, limited liability company interests, partnership interests, instruments or other securities or property (including, but not limited to, cash) which may be paid in respect of the Collateral by reason of any consolidation, merger, exchange of stock, conveyance of assets, liquidation or similar corporate or other reorganization.

Nothing contained in this Section 6 shall limit or restrict in any way the Pledgee's right to receive the proceeds of the Collateral in any form in accordance with Section 3 of this Agreement.   All dividends, distributions, or other payments which are received by any Pledgor contrary to the provisions of this Section 6 or Section 7 hereof shall be received in trust for the benefit of the Pledgee, shall be segregated from other property or funds of such Pledgor and shall be forthwith paid over to the Pledgee as Collateral in the same form as so received (with any necessary endorsement).

7.     REMEDIES IN CASE OF AN EVENT OF DEFAULT.   If there shall have occurred and be continuing an Event of Default, then and in every such case, the Pledgee shall, subject to the terms of the Hedge Intercreditor Agreement, be entitled to exercise all of the rights, powers and remedies (whether vested in it by this Agreement, any other Secured Debt

MDAE000582

Agreement or by law) for the protection and enforcement of its rights in respect of the Collateral, and the Pledgee shall be entitled to exercise all the rights and remedies of a secured party under the UCC as in effect in any relevant jurisdiction and also shall be entitled, without limitation, to exercise the following rights, which each Pledgor hereby agrees to be commercially reasonable:

      (a)     to receive all amounts payable in respect of the Collateral otherwise payable under Section 6 hereof to the respective Pledgor;

      (b)     to transfer all or any part of the Collateral into the Pledgee's name or the name of its nominee or nominees;

      (c)     to accelerate any Pledged Note which may be accelerated in accordance with its terms, and take any other lawful action to collect upon any Pledged Note (including, without limitation, to make any demand for payment thereon);

      (d)     to appoint by instrument in writing a receiver (which term as used in this Agreement includes a receiver and manager) or agent of all or any part of the Collateral and remove or replace from time to time any receiver or agent;

      (e)     to institute proceedings in any court of competent jurisdiction for the appointment of a receiver of all or any part of the Collateral;

      (f)     to vote (and exercise all rights and powers in respect of voting) all or any part of the Collateral (whether or not transferred into the name of the Pledgee) and give all consents, waivers and ratifications in respect of the Collateral and otherwise act with respect thereto as though it were the outright owner thereof (each Pledgor hereby irrevocably constituting and appointing the Pledgee the proxy and attorney-in-fact of such Pledgor, with full power of substitution to do so);

      (g)     at any time and from time to time to sell, assign and deliver, or grant options to purchase, all or any part of the Collateral, or any interest therein, at any public or private sale, without demand of performance, advertisement or notice of intention to sell or of the time or place of sale or adjournment thereof or to redeem or otherwise purchase or dispose of all or any part of the Collateral, or any interest therein (all of which are hereby waived by each Pledgor), for cash, on credit or for other property, for immediate or future delivery without any assumption of credit risk, and for such price or prices and on such terms as the Pledgee in its good faith judgment may determine to be commercially reasonable, provided that at least 10 days' written notice of the time and place of any such sale shall be given to the Borrower for the respective Pledgor. The Pledgee shall not be obligated to make any such sale of Collateral regardless of whether any such notice of sale has theretofore been given. Each Pledgor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security or the Secured Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Pledgee on behalf of the Secured Creditors may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. Neither the Pledgee nor any other Secured

MDAE000583

Creditor shall be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing nor shall any of them be under any obligation to take any action whatsoever with regard thereto; and

(h)    to set-off any and all Collateral against any and all Secured Obligations, and to withdraw any and all cash or other Collateral from any and all Collateral Accounts and to apply such cash and other Collateral to the payment of any and all Secured Obligations.

8.    REMEDIES, CUMULATIVE, ETC.  Each and every right, power and remedy of the Pledgee provided for in this Agreement or in any other Secured Debt Agreement, or now or hereafter existing at law or in equity or by statute shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy.  The exercise or beginning of the exercise by the Pledgee or any other Secured Creditor of any one or more of the rights, powers or remedies provided for in this Agreement or any other Secured Debt Agreement or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by the Pledgee or any other Secured Creditor of all such other rights, powers or remedies, and no failure or delay on the part of the Pledgee or any other Secured Creditor to exercise any such right, power or remedy shall operate as a waiver thereof. No notice to or demand on any Pledgor in any case shall entitle it to any other or further notice or demand in similar or other circumstances or constitute a waiver of any of the rights of the Pledgee or any other Secured Creditor to any other or further action in any circumstances without notice or demand.  The Secured Creditors agree that this Agreement may be enforced only by the action of the Pledgee, in each case, acting upon the instructions of the Required Secured Creditors, and that no other Secured Creditor shall have any right individually to seek to enforce or to enforce this Agreement or to realize upon the security to be granted hereby, it being understood and agreed that such rights and remedies may be exercised by the Pledgee for the benefit of the Secured Creditors upon the terms of this Agreement and the Security Agreement.

9.    RECEIVER'S POWERS.

(a)    Any receiver appointed by the Pledgee pursuant to Section 7 hereof is vested with the rights and remedies which could have been exercised by the Pledgee in respect of any Pledgor or the Collateral and such other powers and discretions as are granted in the instrument of appointment and any supplemental instruments. The identity of the receiver, its replacement and its remuneration are within the sole and unfettered discretion of the Pledgee.

(b)    Any receiver appointed by the Pledgee pursuant to Section 7 hereof will act as agent for the Pledgee for the purposes of taking possession of the Collateral, but otherwise and for all other purposes (except as provided below), as agent for the Pledgors. The receiver may sell, lease, or otherwise dispose of Collateral in accordance with the terms hereof as agent for the Pledgors or as agent for the Pledgee as the Pledgee may determine in its discretion. Each Pledgor agrees to ratify and confirm all actions of the receiver acting as agent for such Pledgor so long as such actions are taken in accordance with the terms hereof.

16

MDAE000584

(c)     The Pledgee, in appointing or refraining from appointing any receiver, does not incur liability to the receiver, the Pledgors or otherwise and is not responsible for any misconduct or negligence of such receiver except to the extent resulting from the gross negligence or willful misconduct of the Pledgee (as determined by a court of competent jurisdiction in a final and non-appealable decision) it being agreed that appointing or refraining from appointing any receiver in the reasonable judgment of the Pledgee's or based on the advice of advisors or counsel shall not constitute gross negligence or willful misconduct.

10.     APPLICATION OF PROCEEDS.

(a)     All monies collected by the Pledgee upon any sale or other disposition of the Collateral as a result of the exercise of any remedies by the Pledgee after the occurrence and during the continuance of an Event of Default pursuant to the terms of this Agreement, together with all other monies received by the Pledgee hereunder, shall, subject to the terms of the Hedge Intercreditor Agreement, be applied in the manner provided in Section 7.4 of the Security Agreement.

(b)     It is understood and agreed that the Pledgors shall remain jointly and severally liable with respect to their Secured Obligations to the extent of any deficiency between the (i) amount of the proceeds of the Collateral pledged by them hereunder and the collateral granted under the other Security Documents and (ii) aggregate amount of such Secured Obligations.

(c)     It is understood and agreed by each Pledgor and each Secured Creditor that the Pledgee shall have no liability for any determinations made by it in this Section 10, in each case except to the extent resulting from the gross negligence or willful misconduct of the Pledgee (as determined by a court of competent jurisdiction in a final and non-appealable decision). Each Pledgor and each Secured Creditor also agrees that the Pledgee may (but shall not be required to), at any time and in its sole discretion, and with no liability resulting therefrom, petition a court of competent jurisdiction regarding any application of Collateral in accordance with the requirements hereof, and the Pledgee shall be entitled to wait for, and may conclusively rely on, any such determination.

11.     PURCHASERS OF COLLATERAL. Upon any sale of the Collateral by the Pledgee hereunder (whether by virtue of the power of sale herein granted, pursuant to judicial process or otherwise), the receipt of the Pledgee or the officer making such sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Pledgee or such officer or be answerable in any way for the misapplication or nonapplication thereof.

12.     INDEMNITY; WAIVER OF CLAIMS.

(a)     Indemnification. Each Pledgor jointly and severally agrees to be bound by the provisions of Section 14.01 of the Credit Agreement with the same force and effect, and to the same extent, as if each reference therein to the Borrower were a reference to

17

MDAE000585

such Pledgor. Any amounts paid by any indemnified person as to which such indemnified person has the right to reimbursement shall constitute Secured Obligations secured by the Collateral.

(b)     Waiver of Claims. Except as otherwise provided in this Agreement, EACH PLEDGOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, NOTICE AND JUDICIAL HEARING IN CONNECTION WITH THE PLEDGEE'S TAKING POSSESSION OR THE PLEDGEE'S DISPOSITION OF ANY OF THE COLLATERAL, INCLUDING, WITHOUT LIMITATION, ANY AND ALL PRIOR NOTICE AND HEARING FOR ANY PREJUDGMENT REMEDY OR REMEDIES, and each Pledgor hereby further waives, to the extent permitted by law:

(i)     all damages occasioned by such taking of possession or any such disposition except any damages which are the direct result of the Pledgee's gross negligence or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision);

(ii)     all other requirements as to the time, place and terms of sale or other requirements with respect to the enforcement of the Pledgee's rights hereunder; and

(iii)     all rights of redemption, appraisement, valuation, stay, extension or moratorium now or hereafter in force under any applicable law in order to prevent or delay the enforcement of this Agreement or the absolute sale of the Collateral or any portion thereof, and each Pledgor, for itself and all who may claim under it, insofar as it or they now or hereafter lawfully may, hereby waives the benefit of all such laws.

Any sale of, or the grant of options to purchase, or any other realization upon, any Collateral shall operate to divest all right, title, interest, claim and demand, either at law or in equity, of the relevant Pledgor therein and thereto, and shall be a perpetual bar both at law and in equity against such Pledgor and against any and all Persons claiming or attempting to claim the Collateral so sold, optioned or realized upon, or any part thereof, from, through and under such Pledgor.

13.     PLEDGEE NOT A PARTNER OR LIMITED LIABILITY COMPANY MEMBER.

(a)     Nothing herein shall be construed to make the Pledgee or any other Secured Creditor liable as a member of any limited liability company or as a partner of any partnership and neither the Pledgee nor any other Secured Creditor by virtue of this Agreement or otherwise (except as referred to in the following sentence) shall have any of the duties, obligations or liabilities of a member of any limited liability company or as a partner in any partnership. The parties hereto expressly agree that, unless the Pledgee shall become the absolute owner of Collateral consisting of a Limited Liability Company Interest or a Partnership Interest pursuant hereto and is admitted as a member or partner of the respective Limited Liability Company or Partnership, this Agreement shall not be

18

MDAE000586

construed as creating a partnership or joint venture between or among the Pledgee, any other Secured Creditor, any Pledgor and/or any other Person.

(b)     Except as provided in the last sentence of paragraph (a) of this Section 13, the Pledgee, by accepting this Agreement, did not intend to become a member of any limited liability company or a partner of any partnership or otherwise be deemed to be a co-venturer with respect to any Pledgor, any limited liability company, partnership and/or any other Person either before or after an Event of Default shall have occurred.  The Pledgee shall have only those powers set forth herein and the Secured Creditors shall assume none of the duties, obligations or liabilities of a member of any limited liability company or as a partner of any partnership or any Pledgor except as provided in the last sentence of paragraph (a) of this Section 13.

(c)     The Pledgee and the other Secured Creditors shall not be obligated to perform or discharge any obligation of any Pledgor as a result of the pledge hereby effected.

(d)     The acceptance by the Pledgee of this Agreement, with all the rights, powers, privileges and authority so created, shall not at any time or in any event obligate the Pledgee or any other Secured Creditor to appear in or defend any action or proceeding relating to the Collateral to which it is not a party, or to take any action hereunder or thereunder, or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under the Collateral.

14.     FURTHER ASSURANCES; POWER-OF-ATTORNEY.

(a)     Each Pledgor will, at its own expense and upon the reasonable request of the Pledgee, make, execute, endorse, acknowledge, file and/or deliver to the Pledgee from time to time such lists, descriptions and designations of its Collateral, warehouse receipts, receipts in the nature of warehouse receipts, bills of lading, documents of title, vouchers, invoices, schedules, confirmatory assignments, conveyances, financing statements, transfer endorsements, certificates, reports and other assurances or instruments and take such further steps relating to the Collateral and other property or rights covered by the security interest hereby granted, which the Pledgee deems reasonably necessary to perfect, preserve or protect its security interest in the Collateral and agrees to do such further acts and things and to execute and deliver to the Pledgee such additional conveyances, assignments, agreements and instruments as the Pledgee may reasonably require or deem reasonably necessary to carry into effect the purposes of this Agreement or to further assure and confirm unto the Pledgee its rights, powers and remedies hereunder or thereunder.

(b)     Each Pledgor hereby constitutes and appoints the Pledgee its true and lawful attorney-in-fact, irrevocably, with full authority in the place and stead of such Pledgor and in the name of such Pledgor or otherwise, from time to time solely after the occurrence and during the continuance of an Event of Default, in the Pledgee's reasonable discretion, to act, require, demand, receive and give acquittance for any and all monies and claims for monies due or to become due to such Pledgor under or arising

19

MDAE000587

out of the Collateral, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute any proceedings and to execute any instrument which the Pledgee may deem necessary or advisable to accomplish the purposes of this Agreement, which appointment as attorney is coupled with an interest.

15.     THE PLEDGEE AS COLLATERAL AGENT.   The Pledgee will hold in accordance with this Agreement and the Hedge Intercreditor Agreement all items of the Collateral at any time received under this Agreement.  It is expressly understood, acknowledged and agreed by each Secured Creditor that by accepting the benefits of this Agreement, each such Secured Creditor acknowledges and agrees that the obligations of the Pledgee as holder of the Collateral and interests therein and with respect to the disposition thereof, and otherwise under this Agreement, are only those expressly set forth in this Agreement, in Section 13.10 of the Credit Agreement and in the Hedge Intercreditor Agreement.  The Pledgee shall act hereunder on the terms and conditions set forth herein and in Section 13.10 of the Credit Agreement. Notwithstanding anything to the contrary in this Agreement or any other Credit Document, in the event of any conflict between the terms of this Agreement and the terms of the Hedge Intercreditor Agreement, the terms of the Hedge Intercreditor Agreement will govern and control in all respects.

16.     TRANSFER BY THE PLEDGORS.   Except as otherwise permitted under the Credit Documents, no Pledgor will sell or otherwise dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Collateral or any interest therein.

17.     REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE PLEDGORS.

(a)     Each Pledgor represents, warrants and covenants as to itself and each of its Subsidiaries that:

(i)     it is the legal, beneficial and (except as to securities credited on the books of a Clearing Corporation or a Securities Intermediary) record owner of, and has good and valid title to, all of its Collateral consisting of one or more Securities, Partnership Interests and Limited Liability Company Interests and that it has sufficient interest in all of its Collateral in which a security interest is purported to be created hereunder for such security interest to attach (subject, in each case, to no pledge, lien, mortgage, hypothecation, security interest, charge, option, Adverse Claim or other encumbrance whatsoever, except the liens and security interests created by the Secured Debt Agreements or other Permitted Liens);

(ii)     it has full power, authority and legal right to pledge all the Collateral pledged by it pursuant to this Agreement;

(iii)     this Agreement has been duly authorized, executed and delivered by such Pledgor and constitutes a legal, valid and binding obligation of such Pledgor enforceable against such Pledgor in accordance with its terms, except to

MDAE000588

the extent that the enforceability hereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and by equitable principles (regardless of whether enforcement is sought in equity or at law);

(iv)     except to the extent already obtained or made no consent of any other party (including, without limitation, any stockholder, partner, member or creditor of such Pledgor or any of its Subsidiaries) and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any Governmental Authority is required to be obtained by such Pledgor in connection with (A) the execution, delivery or performance of this Agreement by such Pledgor, (B) the validity or enforceability of this Agreement against such Pledgor (except as set forth in clause (iii) above), (C) the perfection or enforceability of the Pledgee's security interest in such Pledgor's Collateral, or (D) except for compliance with or as may be required by applicable securities laws, the exercise by the Pledgee of any of its rights or remedies provided herein;

(v)     neither the execution, delivery or performance by such Pledgor of this Agreement, nor compliance by it with the terms and provisions hereof nor the consummation of the transactions contemplated herein:  (A) will contravene any provision of any applicable law, statute, rule or regulation, or any applicable order, writ, injunction or decree of any court, arbitrator or governmental instrumentality, domestic or foreign, applicable to such Pledgor; (B) will conflict or be inconsistent with or result in any material breach of any of the terms, covenants, conditions or provisions of, or constitute a default under, or result in the creation or imposition of (or the obligation to create or impose) any Lien (except pursuant to the Security Documents) upon any of the properties or assets of such Pledgor or any of its Subsidiaries pursuant to the terms of any indenture, lease, mortgage, deed of trust, credit agreement, loan agreement or any other material agreement, contract or other instrument to which such Pledgor or any of its Subsidiaries is a party or is otherwise bound, or by which it or any of its properties or assets is bound or to which it may be subject; or (C) will violate any provision of the certificate of incorporation, by-laws, certificate of partnership, partnership agreement, certificate of formation or limited liability company agreement (or equivalent organizational documents), as the case may be, of such Pledgor or any of its Subsidiaries;

(vi)     all of such Pledgor's Collateral consisting of Securities, Limited Liability Company Interests or Partnership Interests has been duly and validly issued and acquired and are fully paid and non-assessable and are subject to no options to purchase or similar rights;

(vii)     each of such Pledgor's Pledged Notes constitutes, or when executed by the obligor thereof will constitute, the legal, valid and binding obligation of such obligor, enforceable in accordance with its terms, except to the extent that the enforceability thereof may be limited by applicable bankruptcy,

21

MDAE000589

insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and by equitable principles (regardless of whether enforcement is sought in equity or at law);

(viii)   the pledge, collateral assignment and delivery to the Pledgee of such Pledgor's Collateral consisting of Certificated Securities and Pledged Notes pursuant to this Agreement and the continued possession thereof by Pledgee creates a valid and perfected first priority security interest in such Certificated Securities and Pledged Notes, and the proceeds thereof, subject to no prior Lien or encumbrance or to any agreement purporting to grant to any third party a Lien or encumbrance (other than Permitted Liens);

(ix)   "control" (as defined in Section 8-106 of the UCC) has been obtained by the Pledgee over all of such Pledgor's Collateral consisting of Securities (including, without limitation, Notes which are Securities, if any) with respect to which such "control" may be obtained pursuant to Section 8-106 of the UCC except to the extent that the obligation of the applicable Pledgor to provide the Pledgee with "control" of such Collateral has not yet arisen under this Agreement; provided that in the case of the Pledgee obtaining "control" (as such term is used in the UCC) over Collateral consisting of a Security Entitlement, such Pledgor shall have taken all steps in its control and requested by the Pledgee so that the Pledgee obtains "control" (as such term is used in the UCC) over such Security Entitlement; and

(x)   the Pledgors shall not take any action to cause any limited liability, unit or other membership interest of the Collateral to be or become a "security" within the meaning of, or to be governed by, Article 8 of the Uniform Commercial Code as in effect under the laws of any state having jurisdiction, and shall not cause any Subsidiary to "opt in" or to take any other action seeking to establish any membership interest of the Collateral as a "security" or to become certificated unless such interest is certificated, pledged and delivered to the Pledgee in accordance with Section 3(b)(i)(A) hereof.

(b)   Each Pledgor covenants and agrees that it will defend the Pledgee's right, title and security interest in and to such Pledgor's Collateral and the proceeds thereof against the claims and demands of all persons whomsoever; and each Pledgor covenants and agrees that it will have like title to and right to pledge any other property at any time hereafter pledged to the Pledgee by such Pledgor as Collateral hereunder and will likewise defend the right thereto and security interest therein of the Pledgee and the other Secured Creditors.

(c)   Each Pledgor covenants and agrees that will take no action which would violate any of the terms of any Secured Debt Agreement.

(d)   No Pledgor shall change its legal name, its type of organization, its status as a Registered Organization (in the case of a Registered Organization), as the case may be, its jurisdiction of organization, its Location, or its organizational identification

22

MDAE000590

number (if any), except that any such changes shall be permitted (so long as not in violation of the applicable requirements of the Secured Debt Agreements and so long as same do not involve (x) a Registered Organization ceasing to constitute same or (y) any Pledgor changing its jurisdiction of organization or Location from the United States or a State thereof to a jurisdiction of organization or Location, as the case may be, outside the United States or a State thereof) if (A) it shall have given notice to the Pledgee and the Administrative Agent not more than 30 days after each change to the information listed on Annex A (as adjusted for any subsequent changes thereto previously made in accordance with this sentence), together with a supplement to Annex A which shall correct all information contained therein for the respective Pledgor, and (B) in connection with such respective change or changes, it shall have taken all action reasonably requested by the Pledgee to maintain the security interests of the Pledgee in the Collateral intended to be granted hereby at all times fully perfected and in full force and effect.  In addition, to the extent that any Pledgor does not have an organizational identification number on the date hereof and later obtains one, the Borrower on behalf of such Pledgor shall promptly thereafter notify the Pledgee and the Administrative Agent of such organizational identification number and shall take all actions reasonably satisfactory to the Pledgee and the Administrative Agent to the extent necessary to maintain the security interest of the Pledgee in the Collateral intended to be granted hereby fully perfected and in full force and effect.

18.    PLEDGORS' OBLIGATIONS ABSOLUTE, ETC.  Prior to the Termination Date, the obligations of each Pledgor under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by any circumstance or occurrence whatsoever, including, without limitation:  (i) any renewal, extension, amendment or modification of or addition or supplement to or deletion from any Secured Debt Agreement or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof (except to the extent that any such modification expressly and directly relates to such Pledgor's obligations under this Agreement); (ii) any waiver, consent, extension, indulgence or other action or inaction under or in respect of any such agreement or instrument including, without limitation, this Agreement; (iii) any furnishing of any additional security to the Pledgee or its assignee or any acceptance thereof or any release of any security by the Pledgee or its assignee; (iv) any invalidity or unenforceability, in whole or in part, of any such instrument or agreement or any term thereof; or (v) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to any Pledgor or any Subsidiary of any Pledgor, or any action taken with respect to this Agreement by any trustee or receiver, or by any court, in any such proceeding, whether or not such Pledgor shall have notice or knowledge of any of the foregoing.

19.    REGISTRATION, ETC.

(a)    If there shall have occurred and be continuing an Event of Default then, and in every such case, upon receipt by any Pledgor from the Pledgee of a written request or requests that such Pledgor cause any registration, qualification or compliance under any Federal or state securities law or laws to be effected with respect to all or any part of the Collateral consisting of Securities, Limited Liability Company Interests or

23

MDAE000591

Partnership Interests of, or owned by, such Pledgor, such Pledgor as soon as practicable and at its expense will cause such registration to be declared effected (and be kept effective) and will cause such qualification and compliance to be declared effected (and be kept effective) as may be so requested and as would permit or facilitate the sale and distribution of such Collateral including, without limitation, registration under the Securities Act, as then in effect (or any similar statute then in effect), appropriate qualifications under applicable blue sky or other state securities laws and appropriate compliance with any other governmental requirements; provided, that the Pledgee shall furnish to the Borrower on behalf of such Pledgor such information regarding the Pledgee as the Borrower on behalf of such Pledgor may reasonably request in writing and as shall be required in connection with any such registration, qualification or compliance. The Borrower on behalf of the respective Pledgor will cause the Pledgee to be kept reasonably advised in writing as to the progress of each such registration, qualification or compliance and as to the completion thereof, will furnish to the Pledgee such number of prospectuses, offering circulars or other documents incident thereto as the Pledgee from time to time may reasonably request, and will indemnify the Pledgee, each other Secured Creditor and all others participating in the distribution of such Collateral against all claims, losses, damages and liabilities caused by any untrue statement (or alleged untrue statement) of a material fact contained therein (or in any related registration statement, notification or the like) or by any omission (or alleged omission) to state therein (or in any related registration statement, notification or the like) a material fact required to be stated therein or necessary to make the statements therein not misleading, except insofar as the same may have been caused by an untrue statement or omission based upon information furnished in writing to the Borrower on behalf of such Pledgor by the Pledgee or such other Secured Creditor expressly for use therein.

(b)      If at any time when the Pledgee shall determine to exercise its right to sell all or any part of the Collateral consisting of Securities, Limited Liability Company Interests or Partnership Interests pursuant to Section 7 hereof, and the Collateral or the part thereof to be sold shall not, for any reason whatsoever, be effectively registered under the Securities Act, as then in effect, the Pledgee may, in its sole and absolute discretion, sell such Collateral, as the case may be, or part thereof by private sale in such manner and under such circumstances as the Pledgee may deem reasonably necessary or advisable in order that such sale may legally be effected without such registration. Without limiting the generality of the foregoing, in any such event the Pledgee, in its sole and absolute discretion (i) may proceed to make such private sale notwithstanding that a registration statement for the purpose of registering such Collateral or part thereof shall have been filed under such Securities Act, (ii) may approach and negotiate with a single possible purchaser to effect such sale, and (iii) may restrict such sale to a purchaser who will represent and agree that such purchaser is purchasing for its own account, for investment, and not with a view to the distribution or sale of such Collateral or part thereof. In the event of any such sale, the Pledgee shall incur no responsibility or liability for selling all or any part of the Collateral at a price which the Pledgee, in its sole and absolute discretion, in good faith deems reasonable under the circumstances, notwithstanding the possibility that a substantially higher price might be realized if the sale were deferred until after registration as aforesaid.

24

MDAE000592

20.     TERMINATION; RELEASE.

(a)     After the Termination Date, this Agreement and the security interest created hereby shall automatically terminate (provided that all indemnities set forth herein including, without limitation, in Section 13 hereof, shall survive any such termination), and the Pledgee, at the written request and expense of the respective Pledgor, will promptly execute and deliver to such Pledgor a proper instrument or instruments (including UCC termination statements on form UCC-3) acknowledging the satisfaction and termination of this Agreement, and will duly assign, transfer and deliver to such Pledgor (without recourse and without any representation or warranty) such of the Collateral as may be in the possession of the Pledgee and as has not theretofore been sold or otherwise applied or released pursuant to this Agreement, subject to any required consents, together with any moneys at the time held by the Pledgee or any of its sub-agents hereunder and, with respect to any Collateral consisting of an Uncertificated Security, a Partnership Interest or a Limited Liability Company Interest (other than an Uncertificated Security, Partnership Interest or Limited Liability Company Interest credited on the books of a Clearing Corporation or Securities Intermediary), a termination of the agreement relating thereto executed and delivered by the issuer of such Uncertificated Security pursuant to Section 3(a)(i)(B) or by the respective partnership or limited liability company pursuant to Section 3(a)(i)(C).  As used in this Agreement, "**Termination Date**" shall mean the date upon which the Commitments under the Credit Agreement have been terminated and all Loans thereunder have been repaid in full, all Secured Hedge Agreements have been terminated and all other Secured Obligations (other than indemnities described in the Credit Documents, in each case which are not then due and payable) then due and payable have been paid in full in cash in accordance with the terms thereof.

(b)     In the event that any part of the Collateral is sold or otherwise disposed of (to a Person other than a Credit Party or a Subsidiary thereof) (x) at any time prior to the time at which all Secured Obligations (other than indemnities described in Section 12 hereof and described in Section 13.06 of the Credit Agreement, and any other indemnities set forth in any other Security Documents, in each case which are not then due and payable,) have been paid in full and all Commitments under the Credit Agreement have been terminated, in connection with a sale or other disposition permitted by the Secured Debt Agreements or is otherwise released at the direction of the Required Lenders (or all the Lenders if required by the Credit Agreement) or (y) at any time thereafter, to the extent permitted by the Secured Debt Agreements, and in the case of clauses (x) and (y), the proceeds of such sale or other disposition (or from such release) are applied in accordance with the terms of the Credit Agreement or such other Secured Debt Agreements, as the case may be, to the extent required to be so applied, the Pledgee, at the request and expense of such Pledgor, will duly release from the security interest created hereby (and will execute and deliver such documentation, including termination or partial release statements and the like in connection therewith) and assign, transfer and deliver to such Pledgor or to the applicable purchaser or transferee (if any) specified by such Pledgor (without recourse and without any representation or warranty) such of the Collateral as is then being (or has been) so sold or otherwise disposed of, or released, and as may be in the possession of the Pledgee (or, in the case of Collateral held by any sub-

MDAE000593

agent designated pursuant to Section 4 hereto, such sub-agent) and has not theretofore been released pursuant to this Agreement, subject to any required consents. Furthermore, upon the release of any Subsidiary Guarantor from the Subsidiaries Guaranty in accordance with the provisions thereof, such Pledgor (and the Collateral at such time pledged by the respective Pledgor pursuant hereto) shall be released from this Agreement.

(c)     At any time that a Pledgor desires that the Pledgee take any action to acknowledge or give effect to any release of Collateral pursuant to the foregoing Section 20(a) or (b), such Pledgor shall deliver to the Collateral Agent a certificate signed by an Authorized Officer of such Pledgor stating that the release of the respective Collateral is permitted pursuant to such Section 20(a) or (b). At any time that the Borrower or the respective Pledgor desires that a Subsidiary of the Borrower which has been released from the Subsidiaries Guaranty be released hereunder as provided in the last sentence of Section 20(b) hereof, it shall deliver to the Pledgee a certificate signed by an Authorized Officer of the Borrower and the respective Pledgor stating that the release of the respective Pledgor (and its Collateral) is permitted pursuant to such Section 20(b).

(d)     The Pledgee shall have no liability whatsoever to any other Secured Creditor as the result of any release of Collateral by it in accordance with (or which the Pledgee in the absence of gross negligence and willful misconduct believes to be in accordance with) this Section 20.

21.     NOTICES, ETC.  All notices and other communications provided for hereunder shall be given in accordance with the notice provisions of Section 14.03 the Credit Agreement or at such other address or addressed to such other individual as shall have been furnished in writing to the party required to give notice hereunder.

22.     WAIVER; AMENDMENT; OBLIGATIONS ABSOLUTE.

(a)     Except as provided in Sections 20 and 31 hereof, none of the terms and conditions of this Agreement may be changed, waived, modified or varied in any manner whatsoever unless in writing duly signed by each Pledgor directly affected thereby (it being understood that the addition or release of any Pledgor hereunder shall not constitute a change, waiver, discharge or termination affecting any Pledgor other than the Pledgor so added or released) and (in each case) the Pledgee (with the written consent of the Required Secured Creditors); provided, however, (i) that supplements to the Annexes hereto may be made without the consent of any Secured Creditor, other than the Collateral Agent, as provided herein or therein, and (ii) Pledgors may be released from their obligations hereunder and new Pledgors may be added hereto without the consent of any Secured Creditors other than the Pledgee, as provided herein or therein (subject to Section 13.12 of the Credit Agreement).

(b)     The obligations of each Pledgor hereunder shall remain in full force and effect without regard to, and shall not be impaired by, (i) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of such Pledgor; (ii) any exercise or non-exercise, or any waiver of, any right, remedy, power or

EAST\160339437.6

MDAE000594

privilege under or in respect of this Agreement or any other Secured Debt Agreement; or (iii) any amendment to or modification of any Secured Debt Agreement or any security for any of the Secured Obligations, whether or not such Pledgor shall have notice or knowledge of any of the foregoing.

23.      SUCCESSORS AND ASSIGNS.   This Agreement shall create a continuing security interest in the Collateral and shall (i) remain in full force and effect, subject to release and/or termination as set forth in Section 20 hereof, (ii) be binding upon each Pledgor, its successors and permitted assigns; provided, however, that no Pledgor shall assign any of its rights or obligations hereunder without the prior written consent of the Pledgee (with the prior written consent of the Required Secured Creditors), and (iii) inure, together with the rights and remedies of the Pledgee hereunder, to the benefit of the Pledgee, the other Secured Creditors and their respective successors, transferees and permitted assigns.   All agreements, statements, representations and warranties made by each Pledgor herein or in any certificate or other instrument delivered by such Pledgor or on its behalf under this Agreement shall be considered to have been relied upon by the Secured Creditors and shall survive the execution and delivery of this Agreement and the other Secured Debt Agreements regardless of any investigation made by the Secured Creditors or on their behalf.

24.      HEADINGS DESCRIPTIVE.    The headings of the several Sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

25.      GOVERNING LAW; SUBMISSION TO JURISDICTION; VENUE; WAIVER OF JURY TRIAL.  Section 14.08 of the Credit Agreement is hereby incorporated by reference, mutatis mutandis.

26.      PLEDGOR'S DUTIES.  It is expressly agreed, anything herein contained to the contrary notwithstanding, that each Pledgor shall remain liable to perform all of the obligations, if any, assumed by it with respect to the Collateral and the Pledgee shall not have any obligations or liabilities with respect to any Collateral by reason of or arising out of this Agreement, nor shall the Pledgee be required or obligated in any manner to perform or fulfill any of the obligations of any Pledgor under or with respect to any Collateral.

27.      COUNTERPARTS.   This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.   Delivery of an executed counterpart hereof by facsimile or electronic transmission shall be effective as delivery of an original executed counterpart hereof.

28.      SEVERABILITY.   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

27

MDAE000595

29.     RECOURSE.  This Agreement is made with full recourse to each Pledgor and pursuant to and upon all the representations, warranties, covenants and agreements on the part of such Pledgor contained herein and in the other Secured Debt Agreements and otherwise in writing in connection herewith or therewith.

30.     ADDITIONAL PLEDGORS.  It is understood and agreed that any Subsidiary of Holdings that is required to execute a counterpart of this Agreement after the date hereof pursuant to the Credit Agreement or any other Credit Document shall become a Pledgor hereunder by (x) executing a counterpart hereof or a joinder agreement and delivering the same to the Pledgee, (y) delivering supplements to Annexes A through G hereto as are necessary to cause such annexes to be complete and accurate with respect to such additional Pledgor on such date and (z) taking all actions as specified in this Agreement as would have been taken by such Pledgor had it been an original party to this Agreement, in each case with all documents required above to be delivered to the Pledgee and the Administrative Agent and with all documents and actions required above to be executed or taken, as the case may be, to the reasonable satisfaction of the Pledgee and the Administrative Agent.

31.     LIMITED OBLIGATIONS.  It is the desire and intent of each Pledgor and the Secured Creditors that this Agreement shall be enforced against each Pledgor to the fullest extent permissible under the laws applied in each jurisdiction in which enforcement is sought. Notwithstanding anything to the contrary contained herein, in furtherance of the foregoing, it is noted that the obligations of each Pledgor constituting a Holding Company or a Subsidiary Guarantor have been limited as provided in the Holdings Guaranty or the applicable Subsidiaries Guaranty, if any.

32.     RELEASE OF PLEDGORS.  If at any time all of the Equity Interests of any Pledgor owned by Holdings or any of its Subsidiaries are sold to a Person other than a Credit Party in a transaction permitted pursuant to the Credit Agreement (and which does not violate the terms of any other Secured Debt Agreement then in effect), then, such Pledgor shall be automatically and irrevocably released as a Pledgor pursuant to this Agreement without any further action hereunder (it being understood that the sale of all of the Equity Interests in any Person that owns, directly or indirectly, all of the Equity Interests in any Pledgor shall be deemed to be a sale of all of the Equity Interests in such Pledgor for purposes of this Section 32), and the Pledgee is authorized and directed to and shall, execute and deliver such instruments of release as are reasonably requested by such Pledgor.  At any time that Holdings desires that a Pledgor be released from this Agreement as provided in this Section 32 and upon the request of the Pledgee, Holdings shall deliver to the Pledgee a certificate signed by an Authorized Officer of Holdings stating that the release of such Pledgor is permitted pursuant to this Section 32.  The Pledgee shall have no liability whatsoever to any other Secured Creditor as a result of the release of any Pledgor by it in accordance with, or which it believes to be in accordance with, this Section 32.

[*Remainder of this page intentionally left blank; signature page follows*]

MDAE000596

IN WITNESS WHEREOF, each Pledgor and the Pledgee have caused this Agreement to be executed by their duly elected officers duly authorized as of the date first above written.

PLEDGORS:

MD AMERICA ENERGY HOLDINGS, INC.

By:_____
     Name: Haixiao Shao
     Title:  Treasurer & Secretary

MD      AMERICA      INTERMEDIATE HOLDINGS, LLC

By:_____
     Name: Haixiao Shao
     Title:  Treasurer & Secretary

MD AMERICA HOLDINGS, LLC

By:_____
     Name: Haixiao Shao
     Title:  Treasurer & Secretary

MDAE000597

PLEDGORS (continued):

MD AMERICA ENERGY, LLC

By: _____
    Name: Eric Waller
    Title:   Chief Executive Officer

MD AMERICA PIPELINE , LLC

By: _____
    Name: Eric Waller
    Title:   Chief Executive Officer

[*Signature Page to Pledge Agreement (MD America Energy)*]

MDAE000598

PLEDGORS (continued):

MD AMERICA FINANCE CORPORATION

By: _____

    Name: Eric Waller
    Title:   Chief Executive Officer

*[Signature Page to Pledge Agreement (MD America Energy)]*

MDAE000599

Accepted and Agreed to:

LOAN ADMIN CO LLC,
    as Collateral Agent and Pledgee

By: _____

    Name:  Sean Chao
    Title:   Authorized Signatory

*[Signature Page to Pledge Agreement (MD America Energy)]*

## ANNEX A

## SCHEDULE OF LEGAL NAMES, TYPE OF ORGANIZATION, JURISDICTION OF ORGANIZATION, LOCATION AND ORGANIZATIONAL IDENTIFICATION NUMBERS

| Legal Name | Jurisdiction | Organizational Numbers |
|---|---|---|
| MD America Energy Holdings, Inc. | Delaware | 5375060 |
| MD America Energy, LLC | Delaware | 5078863 |
| MD America Intermediate Holdings, LLC | Delaware | 5376894 |
| MD America Holdings, LLC | Delaware | 5375063 |
| MD America Pipeline, LLC | Texas | 801235736 |
| MD America Finance Corporation | Delaware | 5078392 |

Location and Address of all Pledgors:
301 Commerce Street, Suite 2500
Fort Worth, Texas 76102

MDAE000601

## ANNEX B

### SCHEDULE OF SUBSIDIARIES

MD America Energy Holdings, Inc. directly owns 100% of the Equity Interests of MD America Intermediate Holdings, LLC

MD America Intermediate Holdings, LLC directly owns 100% of the Equity Interests of MD America Holdings, LLC

MD America Holdings, LLC directly owns 100% of the Equity Interests of MD America Energy, LLC

MD America Energy, LLC directly owns 100% of the Equity Interests of each of MD America Pipeline, LLC and MD America Finance Corporation

Neither MD America Pipeline, LLC nor MD America Finance Corporation has any Subsidiaries

MDAE000602

## ANNEX C-1

## SCHEDULE OF STOCK

| Pledgor | Stock Issuer | Class of Stock | Stock Cert. No. | Number of Shares | % of Outstanding Stock of the Stock Issuer |
|---|---|---|---|---|---|
| MD America Energy, LLC | MD America Finance Corporation | Common Stock | 2 | 100 shares | 100% |

MDAE000603

## ANNEX C-2

## SCHEDULE OF CERTIFICATED SECURITIES

| Pledgor | Stock Issuer | Class of Stock | Stock Cert. No. | Number of Shares | % of Outstanding Stock of the Stock Issuer |
|---------|--------------|----------------|-----------------|------------------|--------------------------------------------|
| MD America Energy, LLC | MD America Finance Corporation | Common Stock | 2 | 100 shares | 100% |

MDAE000604

## ANNEX D

## SCHEDULE OF NOTES

MD America Energy, LLC has a Subordinated Promissory Note from Meidu Energy Corporation in the amount of $21,100,000.00 as of 10/30/2018. This agreement was signed and effective as of August 14, 2018, and has a final maturity date of June 30, 2030.

MDAE000605

## ANNEX E

## SCHEDULE OF LIMITED LIABILITY COMPANY INTERESTS

MD America Energy Holdings, Inc. owns 100% of the equity interests in MD America Intermediate Holdings, LLC

MD America Energy, LLC owns 100% of the equity interests in MD America,Pipeline, LLC

MD America Intermediate Holdings, LLC of the equity interests in MD America Holdings, LLC

MD America Holdings, LLC of the equity interests in MD America Energy, LLC

MDAE000606

## ANNEX F

## SCHEDULE OF PARTNERSHIP INTERESTS

None

MDAE000607

## ANNEX G

## SCHEDULE OF CHIEF EXECUTIVE OFFICES

For all Pledgors:
301 Commerce Street, Suite 2500
Fort Worth, Texas 76102

MDAE000608

## ANNEX H

## FORM OF AGREEMENT REGARDING UNCERTIFICATED SECURITIES, LIMITED LIABILITY COMPANY INTERESTS AND PARTNERSHIP INTERESTS

AGREEMENT (as amended, modified, restated and/or supplemented from time to time, this "**Agreement**"), dated as of _____, 20\_\_\_, among the undersigned pledgor (the "**Pledgor**"), Loan Admin Co LLC, not in its individual capacity but solely as collateral agent under the Pledge Agreement referred to below (in such capacity, and together with any successor thereto, the "**Collateral Agent**"), and [\_\_\_\_\_], as the issuer of the Uncertificated Securities, Limited Liability Company Interests and/or Partnership Interests (each as defined below) (the "**Issuer**").

## W I T N E S S E T H:

WHEREAS, the Pledgor, certain of its affiliates and the Collateral Agent have entered into a Pledge Agreement, dated as of November 14, 2018 (as amended, restated, modified and/or supplemented from time to time, the "**Pledge Agreement**") under which, among other things, in order to secure the payment of the Secured Obligations (as defined in the Pledge Agreement), the Pledgor has or will pledge to the Collateral Agent for the benefit of the Secured Creditors (as defined in the Pledge Agreement), and grant a security interest in favor of the Collateral Agent for the benefit of the Secured Creditors in, all of the right, title and interest of the Pledgor in and to any and all Collateral (as defined in the Pledge Agreement) constituting ["uncertificated securities" (as defined in Section 8-102(a)(18) of the Uniform Commercial Code, as adopted in the State of New York) ("**Uncertificated Securities**")] [Partnership Interests (as defined in the Pledge Agreement)] [Limited Liability Company Interests (as defined in the Pledge Agreement)], from time to time by the Issuer, whether now existing or hereafter from time to time acquired by the Pledgor (with all of such [Uncertificated Securities] [Partnership Interests] [Limited Liability Company Interests] being herein collectively called the "**Issuer Pledged Interests**");

WHEREAS, the Pledgor desires the Issuer to enter into this Agreement in order to perfect the security interests of the Collateral Agent under the Pledge Agreement in the Issuer Pledged Interests, to vest in the Collateral Agent control of the Issuer Pledge Interests and to provide for the rights of the parties under this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual promises and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Secured Party.  For the purposes of this Agreement, the "**Secured Party**" shall mean the Collateral Agent; provided that the Issuer may rely on the Collateral Agent's instructions as the Secured Party and shall have no duty to verify whether the Collateral Agent is eligible to act in the capacity of the Secured Party.

2.    The Pledgor hereby irrevocably authorizes and directs the Issuer, and the Issuer hereby agrees, to comply with any and all instructions and orders originated by the Collateral Agent (and its successors and assigns) regarding any and all of the Issuer Pledged Interests

EAST\160339437.6

MDAE000609

without the further consent by the registered owner (including the Pledgor), and, following its receipt of a notice from the Collateral Agent stating that an "Event of Default" has occurred and is continuing, not to comply with any instructions or orders regarding any or all of the Issuer Pledged Interests originated by any person or entity other than the Collateral Agent (and its successors and assigns) or a court of competent jurisdiction.

3. The Issuer hereby certifies that (i) no notice of any security interest, lien or other encumbrance or claim affecting the Issuer Pledged Interests (other than the security interest of the Collateral Agent) has been received by it, and (ii) the security interests of the Collateral Agent in the Issuer Pledged Interests have been registered in the books and records of the Issuer.

4. The Issuer hereby represents and warrants that (i) the pledge by the Pledgor of, and the granting by the Pledgor of a security interest in, the Issuer Pledged Interests to the Collateral Agent, for the benefit of the Secured Creditors, does not violate the charter, by-laws, partnership agreement, membership agreement or any other agreement governing the Issuer or the Issuer Pledged Interests, and (ii) the Issuer Pledged Interests consisting of capital stock of a corporation are fully paid and nonassessable.

5. All notices, statements of accounts, reports, prospectuses, financial statements and other communications to be sent to the Pledgor by the Issuer in respect of the Issuer will also be sent to the Collateral Agent at the following address:

> LOAN ADMIN CO LLC
> 2200 Atlantic Street, Suite 501
> Stamford, CT 06902
> Attention:  Sean Chao and Purvang Desai
> Facsimile:  (203) 989-9701

6. Following its receipt of a notice from the Collateral Agent stating that the Collateral Agent is exercising exclusive control of the Issuer Pledged Interests in accordance with the Pledge Agreement and until the Collateral Agent shall have delivered written notice to the Issuer that all of the Secured Obligations have been paid in full and this Agreement is terminated, the Issuer will send any and all redemptions, distributions, interest or other payments in respect of the Issuer Pledged Interests from the Issuer for the account of the Collateral Agent only by wire transfers to such account as the Collateral Agent shall instruct.

7. Except as expressly provided otherwise in Sections 5 and 6, all notices, instructions, orders and communications hereunder shall be sent or delivered by mail, telegraph, telex, telecopy, cable or overnight courier service and all such notices and communications shall, when mailed, telexed, telecopied, cabled or sent by overnight courier, be effective when deposited in the mails or delivered to overnight courier, prepaid and properly addressed for delivery on such or the next Business Day, or sent by telex or telecopier, except that notices and communications to the Collateral Agent or the Issuer shall not be effective until received.  All notices and other communications shall be in writing and addressed as follows:

(a)     if to the Pledgor, at:

_____
_____
_____
_____
Attention:_____
Telephone No.:
Fax No.:

(b)     if to the Collateral Agent at the address given in Section 5 hereof;

(c)     if to the Issuer, at:

_____
_____
_____

or at such other address as shall have been furnished in writing by any Person described above to the party required to give notice hereunder. As used in this Section 7, "**Business Day**" means any day other than a Saturday, Sunday, or other day in which banks in New York are authorized to remain closed.

8.     This Agreement shall be binding upon the successors and assigns of the Pledgor and the Issuer and shall inure to the benefit of and be enforceable by the Collateral Agent and its successors and assigns. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one instrument. In the event that any provision of this Agreement shall prove to be invalid or unenforceable, such provision shall be deemed to be severable from the other provisions of this Agreement which shall remain binding on all parties hereto. None of the terms and conditions of this Agreement may be changed, waived, modified or varied in any manner whatsoever except in writing signed by the Collateral Agent, the Issuer and the Pledgor.

9.     THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK (WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES).

* * *

MDAE000611

IN WITNESS WHEREOF, the Pledgor, the Collateral Agent and the Issuer have caused this Agreement to be executed by their duly elected officers duly authorized as of the date first above written.

[_____]
as Pledgor

By: _____
　　　Name:
　　　Title:

[_____]
as Issuer

By: _____
　　　Name:
　　　Title:

LOAN ADMIN CO LLC
as Collateral Agent

By: _____
　　　Name:
　　　Title:

MDAE000612